MOLNLYCKE HEALTH
CARE AB, Plaintiff,

v.

DUMEX MEDICAL SURGICAL
PRODUCTS LTD.,
Defendant.

No. CIV. A. 99–1725.

United States District Court,
E.D. Pennsylvania.

Sept. 7, 1999.

## MEMORANDUM & ORDER

KATZ, Senior District Judge.

Plaintiff Molnlycke Health Care AB brings this patent infringement claim against defendant Dumex Medical Surgical Products Limited. Molnlycke is a Swedish corporation with its principal place of business in Sweden, but it has a wholly owned subsidiary in Eddystone, Pennsylvania. Dumex is a Canadian corporation with its principal place of business in Canada. Plaintiff alleges that it owns a patent pertaining to wound care products and that defendant has infringed on that patent by advertising, selling, and distributing a similar product in the United States. Defendant's present motion requests dismissal for lack of personal jurisdiction, improper venue, and/or failure to state a claim upon which relief can be granted.[1]

### 1. Personal Jurisdiction

Defendant argues that it is not subject to general personal jurisdiction in this district because it has not conducted continuous and substantial business in Pennsylvania. Dumex also argues that there is no specific jurisdiction because it has no "minimum contacts" with this state. In support of these claims, Dumex explains that it does not have a regular place of business in Pennsylvania and that less than one percent of its sales occurred in Pennsylvania. Dumex also states that it has never sold the allegedly infringing product in Pennsylvania. *See* Def. Ex. A ¶¶ 2–4 (Aff. of Bill Goodwin).

---

1. The court rejects plaintiff's argument that the motion is untimely. Although the defendant filed this motion after answering the complaint, that answer included lack of venue, lack of personal jurisdiction, and failure to state a claim as affirmative defenses. *See* Answer, Aff. Defenses One, Two, and Seven. Courts in this circuit have been unwilling to rule a motion untimely in such circumstances. *See, e.g., Martin v. Delaware Law Sch.*, 625 F.Supp. 1288, 1296 n. 4 (D.Del.

1985) (addressing lack of personal jurisdiction and improper venue); *Trustees of the Univ. of Pa. v. Mayflower Transit, Inc.*, Civ. A. No. 97–1111, 1997 WL 598001, at *1–2 (E.D.Pa. Sept.16, 1997) (addressing 12(b)(6) motion and treating it as a 12(c) motion on the pleadings).

The court also declines to rule on the basis that defendant failed to supply a proposed order.

A federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted under state law, *see* Fed.R.Civ.P. 4(e), and Pennsylvania authorizes long-arm jurisdiction to the extent permitted by the due process clause. *See* 42 Pa.C.S. § 5322(b). Once jurisdiction has been challenged, the plaintiff "bears the burden of establishing either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (East) v. DiVeronica Bros.*, 983 F.2d 551, 554 (3d Cir.1993) (citations omitted). The plaintiff may meet this burden and present a prima facie case for exercising personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992), *quoting Provident Nat'l Bank v. California Fed. S & L Ass'n*, 819 F.2d 434 (3d Cir.1987).

Plaintiff does not argue that this court has specific jurisdiction and relies exclusively on a claim of general jurisdiction. Pennsylvania law permits the exercise of general jurisdiction over a corporate defendant when the corporation carries on "a continuous and systematic part of its general business within this Commonwealth." 42 Pa.C.S. § 5301(a)(2)(iii). Unlike specific jurisdiction, general jurisdiction is premised on a defendant's relationship with the forum rather than on particular contacts with the plaintiff. "General jurisdiction permits a court to exercise personal jurisdiction over a nonresident defendant when 'that party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any connection to the forum.'" *Barrett v. Catacombs Press*, 44 F.Supp.2d 717, 723 (E.D.Pa.1999), *quoting Farino*, 960 F.2d at 1221.

To exercise general jurisdiction, a plaintiff must show that a defendant "has maintained 'continuous and substantial' forum affiliations." *Reliance Steel Prods. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir.1982), *quoting International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also Helicopteros Nacionales v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (same). These affiliations are construed in light of the due process clause,[2] which permits the court to exercise jurisdiction only if doing so would not "offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (citations, internal punctuation omitted). That is, a defendant must "reasonably anticipate being haled into court[.]" *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A "plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction." *Provident Nat'l Bank*, 819 F.2d at 437; *see also Reliance Steel Prods.*, 675 F.2d at 588–89 (same); *Modern Mailers*, 844 F.Supp. at 1053 (same). When evaluating a corporation's ties to a state for purposes of general jurisdiction, a court should not necessarily focus on the percentage of income that a corporation derives from those affiliations; rather, the court should look to the party's "purposeful and extensive availment" of a forum. *Provident Nat'l Bank*, 819 F.2d at 437. A court should also consider the degree to which a corporation's contacts with a given forum are "central to the conduct of its business." *Id.* at 438.

Defendant maintains two websites, and plaintiff argues that these internet sites establish general jurisdiction. The web-

---

2. As this is a patent action, the due process clause of the Fifth Amendment rather than the Fourteenth Amendment governs. However, "due process under either amendment limits the long-arm statutes in the same manner." *Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F.Supp. 1048, 1051 (E.D.Pa. 1994).

sites in question are located at domain names "www.dumex.com" and "www.woundcaredirect.com." *See* Compl. ¶ 11; Plf. Ex. B. One of these websites, www.woundcaredirect.com, permits users to place their names and addresses on a mailing list to receive product information. *See* Compl. ¶ 3; Plf. Ex. B at MHC000015 (including e-mail submission form). The websites advertise Dumex's products generally, *see* Plf. Ex. A (news release regarding the products); Plf. Ex. B (describing products); Plf. Ex. C ¶¶ 4–5 (Aff. of Stigall stating that products are for sale on the website), and the product that is the subject of the present cause of action is included. *See* Plf. Ex. B at MHC000022 (advertising Absorb-a-salt product and comparing it to Molnlycke product). Dumex's products can be ordered directly from the websites by clicking on any listed product, adding that item to a shopping cart, completing an on-line order form, and supplying a credit card number. *See* Plf. Ex. B at 16–28 (listing products); *id.* at 30 (describing ordering process); *id.* at 32–48 (explaining process step by step).

■ The growing case law in this Circuit's districts addressing the relationship between personal jurisdiction and internet sites has established a "sliding scale" of jurisdiction based largely on the degree and type of interactivity on the website in question:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.... At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997); *see also Barrett,* 44 F.Supp.2d at 724–26 (looking to same framework); *Blackburn v. Walker Oriental Rug Galleries, Inc.,* 999 F.Supp. 636, 638 (E.D.Pa.1998) (same); *Desktop Tech., Inc. v. Colorworks Reprod. & Design, Inc.,* Civ. A. No. 98–5029, 1999 WL 98572, at *3 (E.D.Pa. Feb. 25, 1999) (same). While plaintiff correctly acknowledges that most of the cases applying this framework have looked to specific jurisdiction, the court agrees that it may also properly be used in cases asserting general jurisdiction. *See Desktop Tech.,* 1999 WL 98572 at *2–4.

■ The court, however, disagrees with plaintiff's more fundamental premise and holds that the establishment of a website through which customers can order products does not, on its own, suffice to establish general jurisdiction. To hold that the possibility of ordering products from a website establishes general jurisdiction would effectively hold that any corporation with such a website is subject to general jurisdiction in every state. The court is not willing to take such a step.

■ While the court acknowledges that new technology will necessarily have an effect on many aspects of the law, it is untenable to suggest that all prior jurisprudence is irrelevant to the internet. The Third Circuit and its district courts have typically required a very high showing before exercising general jurisdiction, and the court sees no reason for the internet to change this approach. For exam-

ple, in *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985), the Third Circuit held that general jurisdiction was improper over a defendant school that advertised in two national newspapers that had substantial circulation in Pennsylvania, received approximately six percent of its students from Pennsylvania, staged a media campaign that included appearances on Philadelphia radio and television shows, and entered into a long-term arrangement with a school in Pennsylvania. *See id.* at 542–43. The Third Circuit emphasized that there was no evidence that Pennsylvania students were particularly solicited or that Pennsylvania itself was · a focus of this wide-ranging promotional effort. *See id.* at 543. This case and other similar decisions suggest that an advertising or other business campaign aimed at selling a particular item, whether that be a medical school education or a more tangible product, cannot be deemed to be purposefully directed at Pennsylvania even if some Pennsylvania residents respond to that campaign. *See id.; Modern Mailers, Inc.*, 844 F.Supp. at 1054 (rejecting general jurisdiction based on generalized advertising campaign; noting other cases so holding). The court believes that Dumex's websites are akin to such a general advertising campaign: while the websites are available in every state, they are not necessarily targeted towards every state. Plaintiff has made no showing that defendant's websites targeted Pennsylvania. *Cf. Weintraub v. Walt Disney World*, 825 F.Supp. 717, 721 (E.D.Pa.1993) (finding general jurisdiction because of extensive contacts through a regional advertising campaign and efforts directed specifically at Pennsylvania customers); *Gavigan v. Walt Disney World*, 646 F.Supp. 786, 787–789 (E.D.Pa.1986) (finding that prolonged, targeted advertising campaign and presence in Pennsylvania justified general jurisdiction).[3]

The plaintiff has also failed to demonstrate that the websites are "central" to the defendant's business. Molnlycke correctly asserts that even a small percentage of income deriving from a particular state may be sufficient to impose general jurisdiction, but the cases so holding focus on the degree to which the business in question is essential to the defendant. In this case, there is no indication that Pennsylvania is an essential part of the conduct of Dumex's business. Defendant has attested that it has no regular place of business in Pennsylvania and has sold less than one percent of all its product line in this state. *See* Def. Ex. A ¶¶ 2–4. Without some other indication of the "quality and nature" of the business with Pennsylvania, it is impossible for the court to find that the small percentage of sales constitute "continuous and systematic business within the forum state." *Modern Mailers*, 844 F.Supp. at 1053; *see also Surgical Laser Tech., Inc. v. C.R. Bard, Inc.*, 921 F.Supp.

---

**3.** On this point, the court cannot help but noticing that most of the cases premising jurisdiction on internet activity have ruled on the basis of specific jurisdiction, and, in fact, plaintiff directs the court to no case in which general jurisdiction was found to exist. *See, e.g., Zippo Mfg. Co.*, 952 F.Supp. at 1122, 1125–27 (noting that plaintiff did not argue general jurisdiction; holding that specific jurisdiction permitted personal jurisdiction); *Gary Scott Int'l, Inc. v. Baroudi*, 981 F.Supp. 714, 716 (D.Mass.1997) (noting that jurisdictional arguments were premised on specific, not general, jurisdiction); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996) ("Compuserve seeks to establish ... specific personal jurisdiction over Patterson."). This is relevant because, as discussed previously, general jurisdiction is much more difficult to establish than is specific jurisdiction: cases finding general jurisdiction have included very extensive contacts. *See, e.g., Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir.1991) (holding general jurisdiction existed because corporation had certificate of authority to do business in Pennsylvania); *Weintraub*, 825 F.Supp. at 720–21 (finding general jurisdiction because of numerosity and duration of defendant's contacts in the course of a regional advertising campaign that focused particularly on Pennsylvania); *TJS Brokerage & Co., Inc. v. Mahoney*, 940 F.Supp. 784, 790 (E.D.Pa.1996) (finding general jurisdiction because of targeted advertising, the use of a Pennsylvania-based trucking company to transport goods, and efforts to solicit Pennsylvania business).

281, 284 (E.D.Pa.1996) (holding that visits to Pennsylvania, a contract leading to sales in Pennsylvania, some employee presence in Pennsylvania, taxes paid in Pennsylvania, and clinical trials in Pennsylvania were insufficient to establish general jurisdiction). The court in *Modern Mailers* suggested that plaintiff could meet its burden by showing that the defendant has such a broad sales area that the percentage of sales in any one state would necessarily be small, but Molnlycke has made no such showing. *See Modern Mailers,* 844 F.Supp. at 1055.

The facts in the present case may be contrasted with those in *Provident National Bank,* 819 F.2d at 434, in which the Third Circuit ruled that a California bank was subject to general personal jurisdiction in Pennsylvania even though the total amount of business in Pennsylvania was tiny. *See id.* at 437–48. Through a "zero-balance account," the California bank conducted business with the Pennsylvania bank "every business day. This daily contact was a continuous and central part of California Federal's business." *Id.* at 438.[4] Here, the court cannot find that Dumex's product sales in Pennsylvania are either as systematic or as central to its business as the bank's interactions with Pennsylvania were.

Nor does the case law cited by plaintiff support such a permissive rule of personal jurisdiction. Plaintiff relies heavily on five cases from outside this circuit and argues that each ruled that personal jurisdiction existed because the defendants solicited business through their internet sites. However, these cases can be distinguished either on their facts or by the law of the jurisdiction in which they were decided.

One often-cited case, *CompuServe,* 89 F.3d 1257, is particularly inapposite to the present dispute. The defendant in that declaratory judgment suit regarding trademark infringement and unfair competition had entered into a contract with an Ohio-based internet company and distributed the software at issue in the case through that Ohio company. *See id.* at 1264–65. As the court noted, Compuserve "acted as Patterson's distributor, albeit electronically and not physically." *Id.* at 1265. Each of the other cases apparently found specific jurisdiction to exist based on the actual interaction between the defendant and residents of the state. *See Thompson v. Handa-Lopez, Inc.,* 998 F.Supp. 738, 744 (W.D.Tex.1998) (finding specific jurisdiction based on Texas residency of plaintiff who had played one of defendant's internet casino games in Texas and who, had he won, would have received the cash or prizes at his home in Texas; noting also that website required users to sign contract); *Gary Scott Int'l, Inc. v. Baroudi,* 981 F.Supp. 714, 716 (D.Mass.1997) (finding specific jurisdiction based on a website advertising product; however, product had been sold to at least one Massachusetts retailer and more products were to be sold in Massachusetts); *Superguide Corp. v. Kegan,* 987 F.Supp. 481, 486 (W.D.N.C. 1997) (finding specific jurisdiction in trademark action because of court's assumption that a "large number of North Carolina residents have visited defendant's website, a number of those visitors have utilized defendant's commercial services, and some have even obtained MACGUIDE credit cards").[5] In short, the court does not believe that any of the cases discussed by the

***

4. Also, the court deemed the California bank to have made certain admissions with respect to continuous business in Pennsylvania. *See id.*

5. Plaintiff also relies on *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996), another trademark infringement case which premised personal jurisdiction on a website the court found to be interactive. *See id.* at 1333. However, that website merely provided advertising information to every internet user who accessed the site. *See id.* The court believes that such a situation is akin to the electronic response cards discussed in *Desktop Technologies* and *Grutkowski,* which do not permit jurisdiction in this district. *See Desktop Tech.,* 1999 WL 98572, at \*3; *Grutkowski,* 1998 WL 962042, at \*4; *see also Blackburn,* 999 F.Supp. at 639 (rejecting notion that e-mail requests for information could provide basis for personal jurisdiction).

plaintiff provide support for the proposition that Dumex's websites establish general personal jurisdiction.

■ The plaintiff has requested that the court permit it to conduct jurisdictional discovery if it determines that the existence of the websites do not convey general personal jurisdiction. The Third Circuit has stated that leave to conduct jurisdictional discovery should be freely granted. *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283–84 (3d Cir.1994). However, the scope of this discovery is within the court's discretion, and allowing such discovery is premised on the assumption that further discovery would be worthwhile. *See Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D.Del.1995). Despite the fact that this case was filed more than four months ago, plaintiff has offered no suggestion that discovery to investigate specific jurisdiction or general jurisdiction based upon a claim besides that of the websites might be productive. Defendant's affidavit that it has never sold the product in question in Pennsylvania and that less than one percent of its total sales are in Pennsylvania is uncontested. Consequently, the court will exercise its discretion and deny the request for further discovery.

## II. Venue

■ Although the court rules on the basis of personal jurisdiction, a brief comment on venue is necessary because defendant moves for transfer under several different statutes. Defendant argues that the court should apply 28 U.S.C. § 1400(b), the patent venue statute, while plaintiff maintains that the court should apply 28 U.S.C. § 1391(d), the alien venue statute. The court agrees with plaintiff that the alien venue statute governs this action.

---

**6.** The court sees no merit in defendant's claims that NAFTA somehow precludes the court from applying 28 U.S.C. § 1391(d).

**7.** A court can transfer a case even though it lacks personal jurisdiction. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir.1964).

This statute states that an "alien may be sued in any district." *Id.* Dumex is a Canadian corporation resident in Toronto. *See* Compl. ¶ 3; Answer ¶ 3. In *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972), the Supreme Court resolved a circuit split by holding that the general alien venue statute takes precedence over the patent venue statute and that, regardless of the cause of action, suit against an alien is governed by 28 U.S.C. § 1391(d). *See id.* at 714, 92 S.Ct. 1936.[6] To the extent that venue is improper, however, it is because the court does not have personal jurisdiction over the defendant, and the court will analyze the transfer issue accordingly.

## III. Failure to State a Claim

The court does not reach this issue because it rules on the basis of personal jurisdiction.

## IV. Transfer versus Dismissal [7]

■ Dumex requests a transfer to the Western District of New York under three different statutes. As the Third Circuit has expressed at least a preference for transfers for lack of personal jurisdiction to be made pursuant to 28 U.S.C. § 1404(a), *see United States v. Berkowitz*, 328 F.2d 358 (3d Cir.1964), the court will apply this statute.[8]

Section 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* As the court finds that the case could have been brought in the West-

---

**8.** Admittedly, that preference has been thrown into doubt in recent years. *See Carteret Savings Bank v. Shushan*, 919 F.2d 225, 233 n. 16 (3d Cir.1990); *see also Chicosky v. Presbyterian Med. Ctr.*, 979 F.Supp. 316, 320 n. 3 (D.N.J.1997) (noting that district courts have continued to transfer cases for lack of personal jurisdiction pursuant to 28 U.S.C. § 1406 or 28 U.S.C. § 1631; listing cases so holding).

ern District of New York, the court must turn to the factors informing such a decision. The statute itself requires consideration of the convenience of the parties, the convenience of the witnesses, and the interests of justice. The court should also look to a variety of other public and private factors before transferring a cause of action. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Private interests include the parties' preferences, the convenience of the parties with respect to their physical and financial presence, the unavailability of witnesses, and the location of books and records. *See id.; see also American Littoral Soc. v. U.S. E.P.A.,* 943 F.Supp. 548, 550 (E.D.Pa.1996) (summarizing relevant factors). Applicable public interests include the enforceability of judgment and administrative difficulty pertaining to court congestion. *See Jumara,* 55 F.3d at 879. It is the burden of the party requesting transfer to establish the need to do so. *See id.*

While the plaintiff raises a variety of arguments against transfer, none counsel against transferring the case. Initially, plaintiff relies on its own forum choice preference, but, as the court rules that it does not have personal jurisdiction, this factor is of little relevance. Plaintiff next argues that many of its own witnesses and potential deponents are located a close drive from Philadelphia in either Eddystone or in Washington, D.C. Plaintiff also argues, however, that it is simple for defendant to travel to Philadelphia because of the contemporary ease of transportation; these same considerations certainly apply to plaintiff's witnesses. Moreover, plaintiff does not suggest that these witnesses would be unavailable, in New York. Finally, plaintiff argues that the congestion of the Western District of New York and the costs to plaintiff to pursuing its action in New York militate against a transfer being in the interest in justice. Even accepting plaintiff's representations regarding the time to trial in New York, the relatively minimal delay plaintiff describes is an insufficient reason to block a transfer. This leaves only the cost to plaintiff, but this cost is never quantified and, without more, is also insufficient to block the transfer.

In contrast, defendant explains that Dumex has a warehouse in Buffalo, New York with many of the relevant materials. Dumex also points out that many witnesses in Canada will need to be deposed for this case, and their presence is much more easily obtained in Buffalo than in Philadelphia. Finally, the court is inclined to grant the motion to transfer because defendant explicitly stated that it would accept personal jurisdiction and venue in that forum. Particularly since plaintiff did not indicate that it would rather have the case dismissed than transferred, the court will grant the motion to transfer under section 28 U.S.C. § 1404(a).

## V. Conclusion

For the court to hold that general personal jurisdiction could be established solely by the existence of websites such as those at issue here would deal a serious blow to the concept of personal jurisdiction. Virtually every corporation, domestic and foreign, would be subject to the general personal jurisdiction of every state. While personal jurisdiction and other legal doctrines must obviously evolve in light of new technologies, the court does not believe the time has yet come to abandon personal jurisdiction altogether. Consequently, the court will grant defendant's motion to transfer because this court lacks personal jurisdiction over it.

An appropriate Order follows.

### *ORDER*

**AND NOW,** this 7th day of September, 1999, upon consideration of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and/or Failure to State a Claim upon which Relief can be Granted, or, in the Alternative to Transfer Venue, and the response thereto, it is **ORDERED** as follows:

(1) Defendant's Motion to Dismiss for lack of personal jurisdiction and/or lack of venue is **DENIED**. Defendant's Motions for Transfer pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1631 are **DENIED**.

(2) Defendant's Alternative Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is **GRANTED**. The Clerk shall transfer the record in this case to the Western District of New York.

(3) Defendant's Motion to Dismiss for failure to state a claim upon which relief may be granted is **DENIED** as **MOOT**.

(4) Plaintiff's Request for Jurisdictional Discovery is **DENIED**.