**S. MORANTZ, INC., Plaintiff,**

v.

**HANG & SHINE ULTRASONICS, INC., Defendant.**

**No. CIV. A. 99–2640.**

United States District Court,
E.D. Pennsylvania.

Dec. 20, 1999.

**538**

Alan H. Bernstein, Philadelphia, PA, for Plaintiff.

David Grove, Philadelphia, PA, for Defendant.

## MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Defendant Hang & Shine Ultrasonics, Inc., has filed a motion to dismiss this trademark infringement action for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2) and for improper venue pursuant to Fed.R.Civ.P. 12(b)(3). Upon consideration of defendant's motion (Document No. 5), plaintiff's response (Document No. 19), and the pleadings and affidavits submitted therewith, defendant's motion will be granted and the case will be transferred to the United States District Court for the Western District of New York.

1. The woman depicted on the corporate materials of Hang & Shine is affectionately referred to as "Sister Mary Agony" by those who work for Hang & Shine. (Declaration of

## I. BACKGROUND

Plaintiff S. Morantz, Inc. ("Morantz"), is a Pennsylvania corporation that manufactures and sells Ultrasonic cleaning machines. The Ultrasonic machines use sound waves and cleaning agents to remove dirt and residue from household items such as window blinds. Morantz's only place of business is in Philadelphia, within the Eastern District of Pennsylvania, though it apparently makes sales nationwide. In 1991, Morantz sold one of its machines to defendant Hang & Shine Ultrasonics, Inc. ("Hang & Shine"), a New York corporation with its principal place of business in Alden, New York, within the Western District of New York. Hang & Shine is in the business of cleaning window blinds, and it maintains a presence on the World Wide Web and a toll-free, 1–800 number.

Morantz alleges that Hang & Shine infringed upon Morantz's registered trademark by using, on its web site and elsewhere, a logo depicting a woman scrubbing blinds over a tub of water.[1] Morantz has asserted claims under the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125, under Pennsylvania statute, 54 Pa.C.S.A. § 1124 and 73 Pa. Stat. § 201–2, *et seq.*, and at common law.

Hang & Shine has moved to dismiss the present action on the grounds that jurisdiction is lacking and venue is improper. Hang & Shine claims that its contacts with Pennsylvania are minimal and that "the substantial part of the events or omissions giving rise to the claim occurred" outside the Eastern District of Pennsylvania. Morantz counters that Hang & Shine's contacts with Pennsylvania through its web site and toll-free number were substantial and that Morantz's choice of forum should be respected.

## II. ANALYSIS

Because Pennsylvania's long-arm statute permits the exercise of *in personam* juris-

James Ieraci, at ¶ 13 (filed Oct. 21, 1999)). Morantz offers no such moniker, conventical or otherwise, for its logo.

diction to the fullest extent allowed under the U.S. Constitution, we look to federal law in deciding questions of personal jurisdiction. *See* 42 Pa.C.S.A. § 5332; *see also Harbuck v. Aramco, Inc.,* No. 99–1971, 1999 WL 999431, 1999 U.S. Dist. LEXIS 16892 (E.D.Pa. Oct. 21, 1999).

Once defendant has raised a jurisdictional issue, the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts to support jurisdiction. *See Provident National Bank v. California Federal Savings & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987). Plaintiff may establish either specific jurisdiction, when the cause of action arises out of the defendant's contacts with the forum, or general jurisdiction, when the plaintiff's claim does not arise out of defendant's contacts with the forum, but defendant's contacts with the forum are "continuous and systematic." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). Both parties agree that Hang & Shine's contacts with Pennsylvania were not "continuous and systematic" in a manner sufficient to establish general jurisdiction, and therefore my analysis will focus on specific jurisdiction.

■ Plaintiff must satisfy a three-part test to establish specific jurisdiction. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1123–24 (E.D.Pa.1997). "First, the plaintiff must show that defendant has constitutionally sufficient 'minimum contacts' with the forum," *IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 260 (3d Cir.1998); that is, defendant must have purposefully availed itself of jurisdiction through contacts that were more than merely "random," "fortuitous," or "attenuated." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Second, plaintiff's claims must arise out of those contacts. *See Zippo,* 952 F.Supp. at 1122–23. Third,

the court must determine that the exercise of jurisdiction would be reasonable; in other words, the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

Plaintiff's argument on the first and most critical element rests almost exclusively on Hang & Shine's web site. The exponential growth of the Internet, the arrival of the World Wide Web as a business medium, and the jurisdiction-confounding nature of cyberspace have spawned new strains of jurisdictional analysis.[2] A few common themes have emerged in courts' approaches to personal jurisdiction and minimum contacts on the information superhighway.

■ First, a mere presence on the World Wide Web does not establish the minimum contacts necessary to subject a corporation to personal jurisdiction on a worldwide basis. *See Harbuck v. Aramco,* No. 99–1971, 1999 WL 999431, 1999 U.S. Dist. LEXIS 16892, at *21 ("[T]he web site amounts to 'passive' advertising at best; and subjecting ADAMS to this court's jurisdiction because of the web site would be unreasonable."); *Molnlycke Health Care AB v. Dumex Medical Surgical Products Ltd.,* 64 F.Supp.2d 448, 452 (E.D.Pa. 1999) ("[T]he establishment of a web site through which customers can order products does not, on its own, suffice to establish general jurisdiction."); *Hurley v. Cancun Playa Oasis Int'l Hotels,* No. 99–574, 1999 WL 718556, at *3, 1999 U.S. Dist. LEXIS 13716, at *9 (E.D.Pa. Aug. 31, 1999) (a hotel's Internet presence alone did not subject it to personal jurisdiction in Pennsylvania); *Zippo,* 952 F.Supp. at 1124 ("A passive web site that does little more

---

**2.** For a more comprehensive discussion of the nature of the Internet, see *ACLU v. Reno,* 31

F.Supp.2d 473, 481–84 (E.D.Pa.1999).

than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction."); *Edberg v. Neogen Corporation,* 17 F.Supp.2d 104, 115 (D.Conn.1998) ("[T]he minimum contacts requirements of the Due Process Clause are not met by virtue of defendant's maintenance of a Web site on the Internet."); *Cybersell, Inc., Ariz. v. Cybersell, Inc., Fla.,* 130 F.3d 414, 418 (9th Cir.1997) ("[S]o far as we are aware, no court has ever held that an Internet advertisement alone is sufficient to subject the advertiser to jurisdiction in the plaintiff's home state . . . ."); *but see Inset Systems, Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161 (D.Conn.1996) (maintaining a web site and telephone number is sufficient to establish personal jurisdiction in every state); *Heroes, Inc. v. Heroes Foundation,* 958 F.Supp. 1 (D.D.C.1996) (web site that explicitly solicited donations and provided toll-free number subject to jurisdiction).[3]

■ Second, the minimum contacts analysis in cases involving the Internet is conducted on a "sliding scale," on which the constitutionality of the exercise of personal jurisdiction is directly proportional to the level of commercial interactivity on a corporation's web site. *See Zippo,* 952 F.Supp. at 1124. At one end of the continuum are passive sites that merely post information that is available to anyone with access to the Internet; on the other end are highly interactive sites through which a corporation conducts business over the Internet. *See id.* The latter sites typically involve a high volume of deliberate exchanges of information through the site, including the formation of contracts. *See id.* In the middle are "interactive Web sites where a user can exchange information with the host computer." *Id.*

The exercise of personal jurisdiction in cases involving sites in this middle category hinges on the level of commercial information exchange that takes place on the web site. *See id.*

■ Third, a web site targeted at a particular jurisdiction is likely to give rise to personal jurisdiction. *See Molnlycke Health Care,* 64 F.Supp.2d 448, 452 ("Plaintiff has made no showing that defendant's websites targeted Pennsylvania.").[4] While the posting of a generalized advertisement on the Internet is insufficient to subject the advertiser to jurisdiction in the plaintiff's home state, minimum contacts may be found when there is " 'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Cybersell,* 130 F.3d at 418.

■ Fourth, the Court will consider the quality and quantity of contacts with the plaintiff's jurisdiction to which the Internet site has given rise in determining whether personal jurisdiction may be exercised. *See Maritz v. Cybergold, Inc.,* 947 F.Supp. 1328, 1333 (E.D.Mo.1996). For instance, in *Zippo,* 952 F.Supp. at 1126, the court based its exercise of personal jurisdiction in part on the fact that the defendant in that case had contracted with 3,000 people in plaintiff's jurisdiction through its web site, and in *Heroes,* 958 F.Supp. 1, the court gave weight to the number of "hits" to a web page by residents in the forum state.

■ Turning to the facts of this case, I reject at the outset plaintiff's suggestion that Hang & Shine's maintenance of a toll-free number and a web site that is accessible to individuals within the state of Penn-

---

**3.** The latter two cases represent the minority view of personal jurisdiction with respect to the Internet, and, despite the relative recency, might be considered ancient in light of the meteoric growth of the Internet and the rapid progress of jurisprudence in this area of the law. *See Harbuck,* 1999 WL 999431, 1999 U.S. Dist. LEXIS 16892, at * 21. Both cases have been heavily criticized in numerous jurisdictions.

**4.** This element flows out of the "purposeful availment" requirement set forth by the Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

sylvania constitutes sufficient minimum contacts to subject Hang & Shine to personal jurisdiction in this district. The case law is clear on this point; there must be "something more" than a mere web site to justify the exercise of personal jurisdiction over a non-resident corporation. *See Graphic Controls Corp. v. Utah Medical Products,* No. 96–0459E(F), 1997 WL 276232, 1997 U.S. Dist. LEXIS 7448, at *10 (W.D.N.Y. May 21, 1997) (corporation's nationwide toll-free telephone number and informational web site did not demonstrate purposeful availment and thus personal jurisdiction was not found).

■ In search of "something more," I turn to Hang & Shine's web site. On the sliding scale of interactivity discussed above, defendant's web site is at best a middle category site.[5] Clearly, it is not a highly interactive site through which business is conducted. Contracts and sales are not consummated through the web site, and the volume of information exchanged via the site is small. There are a few minimally interactive features on the

site, including a lease application that may be printed out, but not sent over the Internet; a form through which a user may order and pay for a $10 promotional video; a form through which a user may request additional information; and an link by which a user may send e-mail directly to Hang & Shine from the site. (Plaintiff's Memorandum of Law Opposing Defendant's Motion to Dismiss or Transfer, Exhibit 13).

Upon a careful review of the record and the case law on this subject, I conclude that these web site features are not interactive enough to justify the exercise of personal jurisdiction by this Court. The presence of an e-mail link or a form for placing orders on a web site does not create the kind of minimum contacts required to establish personal jurisdiction. *See Desktop Technologies, Inc. v. Colorworks Reproduction & Design, Inc.,* No. 98–5029, 1999 WL 98572, 1999 U.S. Dist. LEXIS 1934, at *15 (E.D.Pa. Feb. 24, 1999).[6]

---

**5.** Courts have held that web sites with similar levels of interactivity fall in the "passive" category. *See Blackburn v. Walker Oriental Rug Galleries, Inc.,* 999 F.Supp. 636, 639 (E.D.Pa.1998) ("The e-mail link alone is not enough to establish jurisdiction and plaintiff has not demonstrated that the nature and quality of the commercial activity was sufficient to classify the defendant's Web Site as anything more than passive."); *Grutkowski,* 1998 WL 962042, 1998 U.S. Dist. LEXIS 20255, at *14 ("The e-mail links which permit readers to send questions to SLO are the only interactive elements of these pages, and these links ... are insufficient to make these pages more than advertisements.").

**6.** Plaintiffs seem to argue that a customer's ability to order a promotional video over the web site places Hang & Shine's web site in a category different from the sites discussed above. I find this argument unpersuasive. The sale of a promotional videotape over the Internet does not increase the interactivity of the web site or transform it into a site through which Hang & Shine does its business. Like the web site itself, the videotape merely provides information about Hang & Shine's products. It is not a product in and of itself;

it is merely another medium through which Hang & Shine advertises. Thus, the fact that the web site provides customers with the opportunity to obtain other forms of advertising online does not increase its interactivity for the purpose of considering the exercise of personal jurisdiction. *Cf. Desktop Technologies,* 1999 WL 98572, 1999 U.S. Dist. LEXIS 1934, at 15 ("While visitors to the web site are able to exchange information over the web site via Internet FTP and e-mail, receiving a file through the Internet FTP or an e-mail does not constitute placing an order. Thus, while Defendant is exchanging information over the Internet, it is not doing business over the Internet with residents of Pennsylvania.").

Moreover, the web site in *Molnlycke Health Care* provided any visitor to the site an opportunity order *products* directly from the site by providing a credit card number and completing an on-line order form, yet the court found that general jurisdiction could not be exercised over the foreign corporation. 64 F.Supp.2d at 450. The web site in this case merely offers an opportunity to purchase additional advertising materials, not products, and thus is far less interactive from a business standpoint.

In *Desktop Technologies,* a Pennsylvania corporation filed suit against a Canadian corporation for trademark infringement, and asserted jurisdiction on the basis of the Canadian corporation's web site. Like the site in the present case, the web site in *Desktop Technologies* contained an e-mail link and order form (which, like Hang & Shine's lease application, could not be completed online) and instructions for submitting orders. The court in *Desktop Technologies* held that such features did not subject the defendant corporation to personal jurisdiction in Pennsylvania. In *Grutkowski v. Steamboat Lake Guides & Outfitters, Inc.,* No. 98–1453, 1998 WL 962042, 1998 U.S. Dist. LEXIS 20255 (E.D.Pa. Dec. 21, 1998), the court considered a web site that included an information request form through which a customer could submit her name, address, telephone number, fax number, e-mail address, and comments online. The court concluded that the web site's information exchanging capabilities did not give rise to jurisdiction. *See also Cybersell,* 130 F.3d at 419; *Edberg v. Neogen Corp.,* 17 F.Supp.2d 104 (D.Conn.1998) (web site through which users can learn about products, order product information through online catalog, e-mail corporate representatives, and order products through a toll-free telephone number does not subject Michigan corporation to jurisdiction in Connecticut).[7]

■ Third, Hang & Shine's web site is not targeted at Pennsylvania. Plaintiff has not produced any evidence to show that Hang & Shine actively sought out business in Pennsylvania through its web site or any other means. Defendant offers the affidavit of the president of Hang & Shine, Marc Miller, in which Miller declares that "neither the phone number nor the web site is directed to Pennsylvania residents," and that Hang & Shine "does not advertise in any publications or media that specifically target Pennsylvania, and . . . does not advertise on the television or radio in Pennsylvania." (Declaration in Support of Ultrasonics' Motion to Dismiss, at ¶ 5, 6). The record in this case evinces nothing to support a claim that Hang & Shine aimed its web advertising at the Commonwealth.

Finally, there is no indication that Hang & Shine's Internet site gave rise to any significant levels of contact with users in Pennsylvania. Plaintiff points to the following Hang & Shine contacts with Pennsylvania: the sale of one Ultrasonic cleaning machine to a Pennsylvania corporation in 1998 (Declaration of Lisa Morantz, at ¶ 26); the sale of four videos to Pennsylvania residents within the last two years, two in response to e-mail requests; and five e-mail contacts by Pennsylvania residents. (Letter from Kevin D. McCarthy, Counsel for Hang & Shine, to Alan H. Bernstein, Counsel for Morantz, Sept.13, 1999, Exhibit A to Declaration of William J. Castillo).[8] One machine, four videos and five e-mails do not demonstrate the kind of contacts contemplated in *Zippo,* where defendant had consummated 3,000 contracts with residents of Pennsylvania over the Internet, and other such cases. Hang & Shine is not registered to do business in Pennsylva-

---

7. Cases in which personal jurisdiction has been exercised on the basis of a web site have involved substantially higher levels of interactivity than the site at issue in this case. In *Zippo,* 952 F.Supp. at 1121, the web site offered an Internet news service, which was transmitted over the Internet on a regular basis, and collected information and payment from and contracted with "subscribers" in the plaintiff's jurisdiction, all via the Internet. The site in *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996), collected the e-mail addresses of all visitors to its web site for the purpose of developing a mailing list by means of which it would widely distribute information on its products. The site in this case involves far less interactivity. Furthermore, in *Zippo* and *Maritz,* the courts found other substantial contacts with the forum jurisdiction that are not present in this case.

8. There is no indication in the record that any of these e-mails originated from Hang & Shine's web site.

nia, does not maintain bank accounts or a place of business here, and does not advertise or employ a sales representative here. (Declaration in Support of Ultrasonics' Motion to Dismiss, at ¶ 3, 4, 6). Its contacts appear to be the kind of "fortuitous," "random," and "attenuated" contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Thus, I also conclude that defendant's contacts with Pennsylvania, over the Internet and otherwise, are not substantial enough to justify the exercise of jurisdiction by this Court.

The toll-free number does not expose Hang & Shine to jurisdiction, either. Many courts have declined to exercise jurisdiction where a foreign corporation maintained a toll-free number and a web site. *See Shapiro v. Santa Fe Gaming Corporation,* No. 97–6117, 1998 WL 102677, 1998 U.S. Dist LEXIS 2488, at *6 (N.D.Ill. Feb. 27, 1998) ("[I]t is well settled that the operation of a toll-free telephone number and passive, non-advertising website, without more, is insufficient to satisfy jurisdiction or venue.") (citations omitted); *see also Hurley,* 1999 WL 718556, 1999 U.S. Dist. LEXIS 13716; *Edberg,* 17 F.Supp.2d 104; *Graphic Controls,* 1997 WL 276232, 1997 U.S. Dist. LEXIS 7448. In *Maritz,* the court characterized a toll-free number as far less significant for the purpose of establishing jurisdiction than a web site, observing that "an 800 number provides a less rapid and more limited means of information exchange than a computer with information downloading and printing capabilities." 947 F.Supp. at 1332–33. Having determined that Hang & Shine's web site does not constitute sufficient minimum contacts with Pennsylvania, I conclude also that its maintenance of a toll-free telephone number does not constitute sufficient contacts.

Plaintiff's failure to prove the first element of the specific jurisdiction test by showing that Hang & Shine had sufficient minimum contacts with Pennsylvania is fatal to its effort to establish personal jurisdiction. If plaintiff had satisfied the first element, it may have been able to establish the second element, that its claim arises out of the alleged contacts, because defendant's web site contained the logo at issue in the trademark dispute. However, plaintiff would not prevail on the third element, because this Court's exercise of jurisdiction over Hang & Shine would violate traditional notions of fair play and substantial justice. "If jurisdiction were [to] be based upon a defendant's mere presence on the Internet, this would lead to a defendant's being subjected to jurisdiction on a worldwide basis, and would eviscerate the personal jurisdiction requirements as they currently exist." *Edberg,* 17 F.Supp.2d at 115 (citing *McDonough v. Fallon McElligott, Inc.,* No. 95–4037, 1996 WL 753991, 1996 U.S. Dist. LEXIS 15139 (S.D.Cal. 1996)).

Therefore, defendant's motion to dismiss for lack of jurisdiction pursuant to Fed R.Civ.P. 12(b)(2) will be granted. Furthermore, because this Court does not have personal jurisdiction over defendant Hang & Shine, venue is also improper here, and I will grant defendant's motion under Fed.R.Civ.P. 12(b)(3).

## III. CONCLUSION

Plaintiff has failed to carry its burden of proving that Hang & Shine had sufficient "minimum contacts" with Pennsylvania to warrant the exercise of personal jurisdiction in a manner consistent with the Due Process Clause of the Fourteenth Amendment. The construction of the information superhighway does not warrant a departure from the well-worn path of traditional personal jurisdiction analysis trod by the Supreme Court and innumerable other federal courts, which leads to the exercise of personal jurisdiction only when a foreign corporation has had sufficient minimum contacts with the forum state. I conclude today that a web site alone does not minimum contacts make.

If a district court finds that jurisdiction is lacking, it shall, "if it is in the interest of justice, transfer such action or appeal to any other court in which the action could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. Defendant Hang & Shine acknowledges that the "events giving rise to Morantz's current cause of action occurred substantially in New York," and because the Western District of New York would have both subject matter and personal jurisdiction over this case, the case will be transferred there. *See Grutkowski,* 1998 WL 962042, 1998 U.S. Dist. LEXIS 20255, at *20.

An appropriate Order follows.

### ORDER

**AND NOW,** this 20th day of December, 1999, upon consideration of the motion of defendant Hang & Shine Ultrasonics, Inc. (Document No. 5), to dismiss the complaint for lack of personal jurisdiction and improper venue pursuant to Fed.R.Civ.P. 12(b)(2) and (b)(3), and plaintiff's response (Document No. 19), and having thoroughly reviewed the pleadings and affidavits submitted therewith, it is hereby **ORDERED** that defendant's motion is hereby **GRANTED.**

It is further **ORDERED** that this action is hereby **TRANSFERRED** pursuant to 28 U.S.C. § 1631 to the United States District Court for the Western District of New York, and that the Clerk of this Court shall forthwith cause the file and record to be delivered to the Clerk of the United States District Court for the Western District of New York.