137 F.Supp.2d 1151 (2001)
ENTERPRISE RENT-A-CAR CO., Plaintiff,
v.
Mike STOWELL, Defendant.
No. 4:00CV555 TCM.
United States District Court, E.D. Missouri, Eastern Division.
April 5, 2001.
*1152 Robert Schultz, Schultz and Little, L.L.P., St. Louis, MO, for Enterprise Rent-A-Car Company, plaintiff.
Althea P. Johns, Law Office of Althea P. Johns, P.C., St. Louis, MO, for Mike Stowell, defendant.

MEMORANDUM AND ORDER
MUMMERT, United States Magistrate Judge.
This matter is an action filed by Enterprise Rent-A-Car ("Plaintiff"), a Missouri corporation with its principal place of business in the County of St. Louis, against Michael Stowell ("Defendant"), a California resident, seeking monetary, injunctive, and equitable relief for alleged violations of the Anticybersquatting[1] Consumer Protection Act of 1999, 15 U.S.C. § 1125(d) (Count I); federal trademark infringement, 15 U.S.C. § 1114 (Count 2); section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count 3); common law trademark infringement (Count 4); unfair competition (Count 5); and Missouri's antidilution statute, Mo.Rev.Stat. § 417.061 (Count 6).
Arguing that this Court[2] lacks personal jurisdiction over him, Defendant moves to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. [Doc. 12] Plaintiff opposes the motion, and moves this Court to transfer the case the United States District Court for the Central District of California if the Court concludes that personal jurisdiction is lacking. [Doc. 19]

Background
The facts relevant to a resolution of the pending motions are not in dispute.
*1153 Defendant lives part of the year in California and part in the United Kingdom. (Dep. at 5-6.) He owns several antique stores and, doing business as "UK to L.A.", imports furniture from England to Los Angeles. (Id. at 6-7, 13.) As part of his antique business, Defendant owns and operates a website, "oldpine.com." (Id. at 10.)
Plaintiff is, inter alia, in the business of providing automobile rental services to customers throughout the United States. (Compl.¶ 6.) On June 16, 1997, Plaintiff applied to the United States Patent and Trademark Office to register as its trademark the term "Virtual Car." (Id. ¶ 9.) The Office granted the application in December 1998. (Def.Ex. A.) Plaintiff alleges that it has and will continue to use the mark "Virtual Car" to identify its rental, leasing, and reservation service for automobiles and other motor vehicles. (Comp.¶ 8.)
Defendant, on the other hand, registered the term "VIRTUALCAR.COM" with InterNIC Registration Services as a domain name,[3] effective October 12, 1997. (Dep. Ex. 10.) He intended to buy and sell antique and classic cars on the "VIRTUALCAR.COM" website. (Dep. at 14.) The site was built on Defendant's computer in England. (Id. at 17.)
In June 1999, Defendant was contacted by Plaintiff's legal counsel. (Def.Ex. 2.) Counsel advised Defendant that VIRTUAL CAR was a registered trademark belonging to Plaintiff and requested that Defendant transfer all rights and ownership in the domain name to Plaintiff. (Id.) Counsel noted that, "Our research indicates that you are not currently utilizing the VIRTUALCAR.COM domain name." (Id.) In reply, Defendant's counsel noted that Defendant had registered the VIRTUALCAR.COM domain name prior to VIRTUAL CAR being registered as Plaintiff's trademark. (Def.Ex. 3.) Plaintiff's counsel countered that the date when an application is filed is the determinative factor in trademark law and, in a later letter, offered to pay Defendant $500 to reimburse him for his out-of-pocket expenses in registering the domain name. (Def.Exs.4, 5.)
Defendant shut down the website in October 2000 without having purchased or sold any cars via the site. (Dep. at 15.) He does not know how many "hits" he had on the website while it was in operation. (Id.) He sold the domain name "VIRTUALCAR.COM" in April 2000 to a company in England. (Dep.Ex. 11.) Before the sale, for a period of approximately eighteen months, Defendant's "VIRTUALCAR.COM" website had a link to "oldpine.com." (Dep. at 16.)

Discussion
The issue of personal jurisdiction and the effect of electronic commerce (e-commerce) on that legal principle has been litigated with some frequency in the past six years. See, e.g., Millennium Enterprises, Inc. v. Millennium Music, LP, 33 F.Supp.2d 907, 908 (D.Or.1999) (reviewing or citing over 30 cases dealing with jurisdiction and the Internet as of 1999). Companies conducting business on the Internet have created this flow of litigation. Although this important jurisdictional question is no longer on the cutting edge of jurisprudence, the Court will begin its discussion *1154 with a brief explanation of the Internet.
"The Internet is a decentralized, self-maintained networking system that links computers and computer networks around the world, and is capable of quickly transmitting communications." ACLU v. Reno, 217 F.3d 162, 168 (3rd Cir.2000). Computer networks communicate with one another by using a standard language or protocol. America Online, Inc. v. Huang, 106 F.Supp.2d 848, 850 (E.D.Va.2000). "[F]or the Internet to function, each computer connected to the Internet, known as a `host,' must have a unique identity, so that other computers identify it. Currently, a computer's identify on the Internet is its Internet Protocol address." Id. The Internet Protocol address is a series of four numbers, each between 0 and 255, separated by periods. Id. (citations omitted). For ease of access,[4] an alphanumeric domain name is employed instead of the Internet Protocol address to locate a particular computer on the Internet. Id. See also note 3, supra.
In October 1997, Defendant registered as a domain name a trademark that Plaintiff applied to register as such five months before. This domain name was the name of his website for his planned business of selling and buying classic and antique cars.
"The World Wide Web [the "Web"] is a publishing forum consisting of millions of individual `Web sites' each containing information such as text, images, illustrations, video, animation or sounds provided by that site's creator." Reno, 217 F.3d at 169. "Information is said to be published on the Web as soon as it is made available to others by connecting the publisher's computer to the Internet." Id. Once a site is connected to the Internet, the information on this site becomes available and accessible to all Internet users irrespective of the location of the user or of the website publisher. Id. "[U]nder current technology, Web publishers cannot `prevent [their sites] content from entering any geographic community.'" Id. (first alteration added; second in original) (emphasis supplied). Thus, "`[t]he [Internet] is ambient  nowhere in particular and everywhere at once.'" Id. (quoting Doe v. Roe, 191 Ariz. 313, 955 P.2d 951, 956 (1998)) (first alteration added; second in original).
The question before the Court is whether the publication of Defendant's website "VIRTUALCAR.COM" on the Internet establishes sufficient contact with the Eastern District of Missouri to create personal jurisdiction over Defendant.
"When personal jurisdiction is challenged, the plaintiff has the burden to show jurisdiction exists." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir.1996) (citing Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir.1992)). To survive a motion to dismiss challenging personal jurisdiction, however, "the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd., 89 F.3d 519, 522 (8th Cir.1996). When determining whether the plaintiff has made such a showing, the court must view the evidence in the light most favorable to the plaintiff and must resolve factual conflicts in the plaintiff's favor. Id. "`When a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, the court may inquire, by affidavits or otherwise, into the facts as they exist.'" Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir.1998) *1155 (quoting Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).
The court is guided by two primary rules when deciding whether to exercise personal jurisdiction over a nonresident defendant: first, the forum state's long-arm statute must be satisfied, and, second, due process must not be violated. Digi-Tel Holdings, 89 F.3d at 522. The " `ultimate objective'" of Missouri's long arm-statute[5] is "`to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.'" Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir.2000) (quoting State v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)) (alteration added). "Accordingly, Missouri courts have interpreted the statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." Id. Thus, this Court's inquiry into whether the assertion of personal jurisdiction over Defendant satisfies Missouri's long-arm statute is coextensive with its inquiry into whether the assertion satisfies due process. See Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc., 96 F.Supp.2d 919, 921 (E.D.Mo.2000).
To satisfy due process, the plaintiff must show "minimum contacts" between the defendant and the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In determining whether such a showing has been made, the court should examine (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Burlington Indus., Inc., 97 F.3d at 1102. The first three considerations are of primary importance. Id. Moreover, the underlying inquiry under this "minimum contracts" standard is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). And, if defendant's activities do create sufficient minimum contacts, the court must then consider whether the exercise of personal jurisdiction over that defendant offends "traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316, 66 S.Ct. 154.
Before applying the due process analysis to the instant facts, however, a review of other Circuits' cases determining whether personal jurisdiction exists when the complained-of acts arose in the context of the Internet is instructional.
When asked on an interlocutory appeal to review the district court's assertion of personal jurisdiction over nonresidents, the Circuit Court of Appeals for the District of Columbia in GTE New Media Services, Inc. v. BellSouth Corp., et al., 199 *1156 F.3d 1343 (D.C.Cir.2000), cautioned that "personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in this District." Id. at 1349. Comparing access to a website to being "nothing more than a telephone call by District resident to the defendants' computer servers," the Court found such contact to be insufficient to satisfy the requirements of the District's long-arm statute or of due process. Id. at 1349-50. Similarly, in Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292 (10th Cir.1999), the Tenth Circuit held that the maintenance of a passive web site, i.e., it was not possible to exchange information with the host computer, by an international banking institution did not constitute "substantial and continuous local activity" for general jurisdiction purposes although the website was accessible to Internet users in the forum state. Id. at 1296. The "maintenance of a passive website, merely providing information to interested viewers, [does not] constitute[] the kind of purposeful availment of the benefits of doing business in Utah, such that [the defendant] could expect to be haled into court in that state." Id. at 1299 (alterations added).
The maintenance of a passive website accessible to Texas Internet users was found by the Fifth Circuit Court of Appeals in Mink v. AAAA Dev. LLC, 190 F.3d 333 (5th Cir.1999), not to support personal jurisdiction. At the other end of the spectrum of Interact use, was the knowing and repeated transmission of computer files over the Internet by a defendant who was entering into contracts with residents of the forum state. Id. at 336. In the middle, was the maintenance of a website that allowed the user to exchange information with a host computer. Id. "In this middle ground, the exercise of jurisdiction is determined by the level of interactivity and commercial nature of information that occurs on the Website." Id. The Court concluded that the maintenance of a website that provided (a) information about the defendant's business, including its toll-free telephone number, its mailing address, and its electronic mail address, and (b) a printable mail-in order form did not subject the defendant to personal jurisdiction in Texas. Id. at 336-37.
The maintenance of a passive website was analyzed by the Ninth Circuit Court of Appeals in Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir.1997), to determine whether a nonresident defendant was subject to personal jurisdiction. The website's publisher entered into no contracts in the forum state, made no sales in that state, earned no income from that state, and sent no messages over the Internet to the state. Additionally, the interactivity of the web page was limited to receiving the browser's name and address and an indication of interest. Accordingly, the defendant's contacts were found to be insufficient to establish "purposeful availment." Id. at 419-20.
In Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316 (9th Cir.1998), the Ninth Circuit examined the question of personal jurisdiction over a "cyber pirate"  someone who establishes domain names on the Internet using the valuable trademarks of established companies and then tries to sell the domain names to the rightful trademark owners. Reaffirming its holding in Cybersell that simply registering someone else's trademark as a domain name and posting a website on the Internet was not sufficient to subject a nonresident defendant to personal jurisdiction, the Court found that the requirement in Cypersell of "something more" was satisfied by the defendant directing his injurious activity to the plaintiff in the state in which *1157 it had its principal place of business. Id. at 1322.
The Second Circuit Court of Appeals examined the question of personal jurisdiction in the context of a website in Bensusan Restaurant Corp. v. King, 126 F.3d 25 (2nd Cir.1997), and found it lacking. The website advertised a jazz club in Columbia, Missouri, which included a caution that the club was not to be confused with "one of the world's finest jazz club Blue Note" located in New York and a hyperlink[6] to that club. Id. at 27. The owner of the New York club filed suit against the owner of the Missouri club in the United States District Court for the Southern District of New York. The Second Circuit held that the district court lacked personal jurisdiction based on New York's long-arm statute, and, consequently, did not reach the question whether the exercise of such jurisdiction would satisfy due process. Id. at 27-29.
The maintenance of a website on the opposite end of the spectrum from passive websites was examined by the Sixth Circuit Court of Appeals in CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.1996). A defendant who chose to enter into a contract with an Ohio-headquartered company and who subsequently transmitted his product over the Internet to that company was found to have purposefully availed himself of the privilege of doing business in Ohio and to subject himself to suit in that state. Id. at 1265.
Various district courts confronted with the question whether to assert personal jurisdiction over nonresident defendants who publish a website with a domain name that allegedly infringes on the plaintiff's trademark have considered where on the spectrum the website falls.
If the website is passive, personal jurisdiction is lacking. See Neogen Corp. v. Neo Gen Screening, Inc., 109 F.Supp.2d 724, 728-29 (W.D.Mich.2000); America Online, Inc., 106 F.Supp.2d at 858-59; Tech Heads, Inc. v. Desktop Service Center, Inc., 105 F.Supp.2d 1142, 1149 (D.Or. 2000). See also Amberson Holdings, LLC v. Westside Story Newspaper, 110 F.Supp.2d 332, 336 (D.N.J.2000) ("Internet sites have been categorized into three different areas: (1) interactive sites (used to conduct business over the web); (2) semi-interactive sites (allows exchange of information with the host computer); and (3) passive sites (not possible to exchange information with host computer)."). If the website is active, i.e., it is a conduit through which the defendant conducts business in the forum state over the Internet, personal jurisdiction is present. See Neogen Corp., 109 F.Supp.2d at 728; Tech Heads, Inc., 105 F.Supp.2d at 1149; Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa.1997). See also Sports Authority Mich., Inc. v. Justballs, Inc., 97 F.Supp.2d 806, 813 (E.D.Mich. 2000) ("It is clear that the ability to download, transmit or exchange information with a defendant via the computer and the presence of on-line contracts between a defendant and a plaintiff are sufficient for a court to exercise personal jurisdiction over a defendant.").
In between the two opposite ends of the spectrum are interactive websites that allow the exchange of information. The district court found one such website to be the basis for personal jurisdiction in Northern Light Tech., Inc. v. Northern Lights Club, 97 F.Supp.2d 96, 106-08 (D.Mass.2000). Although the website's publishers had not entered into a commercial *1158 relation with a Massachusetts resident, the website provided links for users who wanted to advertise on the website, the publishers had known that their allegedly infringing website was entering the state of the trademark holder's home, and, on at least two occasions, the publishers had attempted to license the plaintiffs search technology and to interest the plaintiff in taking part in their new business model. The court expressed its doubt that the mere inclusion of the links on the website would have supported jurisdiction. Id. at 106 n. 11. The maintenance of an allegedly infringing website that was used to market goods, including sports memorabilia with the logos of the forum state's athletic teams, allowed customers to contact the defendant via e-mail, and allowed the defendant to confirm by e-mail that a customer's order had been shipped satisfied due process and permitted the exercise of personal jurisdiction over the website's publisher in Sports Authority, 97 F.Supp.2d at 814. See also American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc., 106 F.Supp.2d 895, 901 (N.D.Tex.2000) (finding that the exercise of personal jurisdiction satisfied due process in case in which allegedly infringing website allowed the users to submit via the site product order forms that contained credit card and shipping information and allowed users to communicate via e-mail with publisher's employees and in which publisher of website shipped its products directly to homes of forum state's residents); Tech Heads, Inc., 105 F.Supp.2d at 1150 (finding that the exercise of personal jurisdiction satisfied due process in case in which allegedly infringing website was "highly interactive" and in which there was one actual transaction involving a resident of the forum state; court noted that "the critical inquiry in determining whether there was a purposeful availment of the forum state is the quality, not merely the quantity of the contacts.").
In Uncle Sam's, 96 F.Supp.2d at 922, this District declined to exercise personal jurisdiction over a defendant who published a website, denominated with an allegedly infringing retail name, that was accessible to anyone with Internet access and that included a toll-free telephone number to place an order. It was not then possible to place an order over the website, although it was possible to view available merchandise on the site. And, there had only been seven orders placed by telephone, all from customers in New York. Noting the lack of evidence of anyone from Missouri accessing the site and of any business being done over the Internet, the Court found that the operation of a "potentially interactive website" did not suffice to establish personal jurisdiction. Id. at 923. See also Molnlycke Health Care AB v. Dumex Med. Surgical Products, 64 F.Supp.2d 448, 451 (E.D.Pa.1999) (maintenance of website on which defendant sold allegedly infringing product did not establish general personal jurisdiction over defendant, there was no showing that website targeted forum state and to find jurisdiction in such situation would be to "effectively hold that any corporation with such a website is subject to general jurisdiction in every state.")
In the instant case, Defendant published and maintained a website with the domain name "VIRTUALCAR.COM" that was accessible to Missouri users of the Internet. The website included photographs of classic cars, but the user could not purchase such cars via the site or exchange information with Defendant via the site. No Missouri users contacted Defendant about buying cars and the site led to no business with a Missouri user. Exercising personal jurisdiction in this case is inconsistent with due process. To hold otherwise "would automatically result in personal jurisdiction wherever the plaintiffs *1159 principal place of business is located. That would not comport with traditional notions of what qualifies as purposeful activity invoking the benefits and protections of the forum state." Cybersell, Inc., 130 F.3d at 420.
Plaintiff argues, however, that Defendant did direct its activity to Missouri by attempting to sell the domain name to Plaintiff. This argument is unavailing. Unlike the cyber-pirate in the case cited by Plaintiff, Panavision Int'l, 141 F.3d at 1319, there is no evidence submitted by Plaintiff to indicate that Defendant purposefully availed himself of a name that he knew Plaintiff had applied to have registered as its trademark or that Defendant's website was fraudulent. Cf. Id. (defendant had registered over 100 domain names, including plaintiffs name and names such as Delta Airlines, Neiman Marcus; website identified by domain name that was the same as plaintiffs name, Panavision, displayed pictures of the City of Pana, Illinois; website identified by domain name that was identical to plaintiffs other trademark, the registration for which was applied for by defendant after plaintiff refused his offer to sell it the first domain name for $13,000, displayed only the word "Hello").
Plaintiff has submitted evidence that a Missouri user could, for approximately 18 months, click on a link at VIRTUALCAR.COM to a website for Defendant's antique business, "oldpine.com," and on that website could exchange information with Defendant via an e-mail link. (Pl. Ex.1.) It is not "oldpine.com" that is at issue, however. And, this Court declines to find that a link to that site supports personal jurisdiction where otherwise it is lacking.
For the foregoing reasons, the Court finds that the exercise of personal jurisdiction over Defendant in this District would not satisfy due process; the Court will not, however, for the reasons set forth below, dismiss the action but will transfer it to the United States District Court for the Central District of California.

Conditional Motion to Transfer
Plaintiff requests that the Court transfer the case if it finds this District lacks personal jurisdiction over Defendant. Defendant agrees in its response that this action could have been brought initially in the United States District Court for the Central District of California.
Title 28 U.S.C. § 1406(a) provides:
The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
"This section is `broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not.'" Uncle Sam's, 96 F.Supp.2d at 925 (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), and citing Mayo Clinic v. Kaiser, 383 F.2d 653, 654 (8th Cir.1967)). This section should be construed wherever possible to remove procedural obstacles which would prevent the expeditious and orderly adjudication of a case on its merits. Kaiser, 383 F.2d at 654. See also Dostana Enterprises LLC v. Federal Express Corp., 2000 WL 1170134 (S.D.N.Y. Aug. 16, 2000) (outlining factors to consider when determining whether to transfer case pursuant to § 1404(a)).
Citing 28 U.S.C. § 1631 and the unequal financial positions of the parties, Defendant argues that the case should be dismissed, not transferred.
Section 1631 provides that:

*1160 Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred ...
The parties agree that this action could have been filed in the United States District Court for the Central District of California. The Court finds that, in the interest of justice, it is appropriate to transfer this case. See Hempstead County & Nevada County Project v. EPA, 700 F.2d 459, 462-63 (8th Cir.1983) (finding that transfer to the proper venue was appropriate pursuant to § 1631 when there is no jurisdiction where the action is originally filed).
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED in part and DENIED in part as set forth above. [Doc. 12]
IT IS FURTHER ORDERED that Plaintiffs Conditional Motion to Transfer is GRANTED. [Doc. 19]
IT IS FINALLY ORDERED that, pursuant to 28 U.S.C. §§ 1406(a) and 1631, the Clerk of Court is directed to transfer this action to the United States District Court for the Central District of California.

ORDER OF TRANSFER
Pursuant to the Memorandum and Order entered this date and incorporated herein,
IT IS HEREBY ORDERED that this case is transferred to the United States District Court for the Central District of California.
NOTES
[1] The "deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners" is referred to as "cybersquatting." S.Rep. No. 106-140 (1999).
[2] The case is before the undersigned for a final disposition pursuant to the written consent of the parties. See 28 U.S.C. § 636(c).
[3] "A domain name refers to a computer, and does not refer to a particular file, such as a web page. Instead, a particular file on the Internet, such as a web page, is identified by its Uniform Resource Locator ..., which includes the domain name, identifies the file, and indicates the protocol required to access the file." America Online, Inc. v. Huang, 106 F.Supp.2d 848, 851 n. 5 (E.D.Va.2000) (alteration added). Domain names, such as Defendant's, with the .com designation must be registered.
[4] Although establishing the quantity of users of the Internet is difficult "it was recently established that the Internet connects over 159 countries and more than 109 million users." Reno, 217 F.3d at 168-69.
[5] Missouri's long arm statute, Mo.Rev.Stat. § 506.500, provides, in relevant part as follows:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state; ...
[6] "A hyperlink is a `highlighted text or image that, when selected by the user, permits him to view another, related Web document.'" Bensusan Restaurant, 126 F.3d at 27 n. 1 (quoting Shea v. Reno, 930 F.Supp. 916, 929 (S.D.N.Y.1996)).