200 F.Supp.2d 1082 (2001)
Clarence BELL, Jr., et al., Plaintiffs,
v.
IMPERIAL PALACE HOTEL/CASINO, INC., Defendant.
No. 4:01-CV-0883 AGF.
United States District Court, E.D. Missouri, Eastern Division.
October 25, 2001.
*1083 *1084 Donna M. Anderson, Anderson and Gehres, St. Louis, MO, for plaintiffs.
Daniel T. Rabbitt, Rabbitt and Pitzer, St. Louis, MO, for defendant.

ORDER
FLEISSIG, United States Magistrate Judge.
Plaintiffs Clarence and Debra Bell, husband and wife, filed a personal injury suit against the Imperial Palace Hotel and Casino ("Imperial Palace"), alleging one count of negligence and one count of loss of consortium related to a fall that plaintiff Clarence Bell suffered while the plaintiffs were guests at the defendant's hotel located in Las Vegas, Nevada. Defendant moves to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction, claiming that there are not sufficient minimum contacts with the State of Missouri, and under Rule 12(b)(5) for insufficiency of process.[1] Plaintiffs oppose defendant's motions and request, in the alternative, that the Court transfer the case to a district in which it could have originally been brought.

Personal Jurisdiction
The facts relevant to the motion to dismiss for lack of personal jurisdiction are not in dispute. The plaintiffs, Clarence and Debra Bell, are residents of Missouri. The defendant is a Nevada corporation, with its principal place of business in the State of Nevada. In June of 2000, both plaintiffs were guests at the Imperial Palace, a hotel and casino owned and operated by the defendant located in Las Vegas, Nevada. In the complaint, Plaintiff Clarence Bell alleges that he slipped and fell in a puddle of water on the hotel premises thereby sustaining injuries to his body, including his back and hip. Plaintiff Debra Bell asserts a claim for loss of consortium arising from the injuries allegedly sustained from the same incident.
The defendant has asserted, by way of an uncontroverted affidavit,[2] that it does not maintain any agents, offices, bank accounts, or telephone numbers in the State of Missouri. It does not own, use, or possess any real or tangible personal property in Missouri. Furthermore, it has not entered into any contracts to perform services or furnish materials and does not *1085 directly advertise or solicit business in this forum state.
Although the cause of action arose in Nevada, as grounds for personal jurisdiction in Missouri, plaintiffs allege that the defendant "solicited business in the State of Missouri," Complaint at ¶ 3. Plaintiffs base their allegations solely on the fact that the defendant maintains an internet website containing information regarding the Imperial Palace. Plaintiffs assert, and the defendant does not dispute, that the website offers information about the hotel and casino and allows visitors of the site to make online hotel reservations with the submission of credit card information. The site also advertises a toll-free number that may be used to make room reservations. The plaintiffs do not claim they used the website to make their hotel reservations; plaintiffs used a travel agent, who was not affiliated with the defendant, to obtain a room reservation at the Imperial Palace. Nor do plaintiffs suggest that they visited or used the website prior to their visit to defendant's hotel. Plaintiffs assert that the maintenance of this website constitutes the "transaction of business" in the State of Missouri, citing to the first subsection of Missouri's long-arm statute, Mo.Rev.Stat. § 506.500.1(1).[3]
The question before the Court, therefore, is whether the maintenance of an internet website that allows visitors to the site to make hotel room reservations alone constitutes sufficient contact with Missouri to subject the defendant to personal jurisdiction in this Court for an alleged tort that occurred in Nevada. The Court finds that it does not.

Discussion
Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal or transfer of a claim that is lacking personal jurisdiction. In a diversity action where personal jurisdiction is challenged, the Court must first determine if the state's long-arm statute is satisfied and, if so, must then determine if the exercise of that statute comports with the Due Process Clause of the Fourteenth Amendment. Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd., 89 F.3d 519, 522 (8th Cir.1996); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir.1994). While Missouri's long-arm statute on its face purports to circumscribe the forum's jurisdiction over a non-resident defendant to a discrete list of enumerated circumstances, the Missouri Supreme Court has found that the purpose of the long-arm statute is to extend the jurisdiction of Missouri courts over out-of-state defendants to the full extent permitted by the Due Process Clause Fourteenth Amendment. Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir.2000). See also State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 876 (Mo.1982); State ex rel. Deere and Co. v. Pinnell, 454 S.W.2d 889, 892 (Mo.1970). Therefore, the examination of whether Missouri's long-arm statute has been satisfied is coextensive with whether the assertion of person jurisdiction over the defendant meets the requirement of due process, and analysis is collapsed into the single question of whether asserting jurisdiction violates Due Process Clause. Clune, 233 F.3d at 541. See also Angelica *1086 Corp. v. Gallery Mfg. Corp., 904 F.Supp. 993, 996 (E.D.Mo.1995).
When personal jurisdiction is challenged, the burden rests with the plaintiff to show that the exercise of jurisdiction is appropriate. Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir.1996). To defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff need "only make a prima facie showing of personal jurisdiction over the defendant." Digi-Tel Holdings, 89 F.3d at 522. When the issue arises in the context of a motion to dismiss, the court must view the evidence in light most favorable to the plaintiff. Id.
To satisfy due process, a plaintiff must show that there are "minimum contacts" between the forum state and the defendant. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Assuming there are "minimum contacts," the court must consider whether the exercise of personal jurisdiction over the defendant is counter to the "traditional notion of fair play and substantial justice." Id. The underlying inquiry under the "minimum contacts" standard is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "Actions by [the defendant] itself must have created a `substantial connection' with the forum." Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 922 (8th Cir.1995) (quoting McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).
Here, both parties correctly rely upon the five-factor test recited in Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir.1996)[4], which examines (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. The first three factors are of primary importance. Id. There is no magic formula for assessing whether there are sufficient minimum contacts; the court must carefully examine the facts to assess the "nature of the contacts between the defendant and the forum state." Clune, 233 F.3d at 542.
The Supreme Court has recognized two categories of in personam jurisdiction. Specific jurisdiction exists when the nonresident defendant has sufficient contact with the forum state and the cause of action arises out of or relates to that contact. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction is applicable where the plaintiff's cause of action does not arise out and is not related to the defendant's contacts with the forum. Helicopteros, 466 U.S. at 414 n. 9, 104 S.Ct. 1868; Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280-81 (8th Cir.1991). Following the Supreme Court's decision in Helicopteros, courts in the Eighth Circuit have recognized that the third factor of Burlington, the relationship of the cause of action to the contacts, distinguishes between specific and general jurisdiction. Burlington Industries, 97 F.3d at 1102; Bell v. U.S. Kids, 22 F.3d at 819.
While both specific and general jurisdiction must satisfy the requirements of Due Process, general jurisdiction requires a higher level of contacts with the forum state. Helicopteros, 466 U.S. at *1087 417, 104 S.Ct. 1868. General jurisdiction is applicable only where the nonresident defendant's contacts with the forum state are so "continuous and systematic" that the defendant may be subject to suit for causes of action that are unrelated to the forum contacts. Id. at 414 n. 9, 104 S.Ct. 1868. Neither party in the present action has articulated which jurisdiction, general or specific, is applicable to the facts of this case.

A. Specific Jurisdiction
The necessary showing for specific jurisdiction is less than what is required for general jurisdiction. Where specific jurisdiction is asserted, due process is normally satisfied where the defendant purposely directed its activities at the forum, and the controversy arises out of or relates to that activity. Burlington, 97 F.3d at 1103; Wessels, Arnold & Henderson v. National Med. Waste, Inc., 65 F.3d 1427, 1432 n. 4 (8th Cir.1995); Minnesota Mining and Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 697 (8th Cir.1995).
Looking at the first Burlington factor, plaintiffs here rely on the fact that Imperial Palace maintains a website that is accessible by Missouri residents and permits them to make reservations to stay at the hotel in Las Vegas. Specifically, plaintiffs assert that the exercise of personal jurisdiction is appropriate because Imperial Palace's site is an "interactive" website, as first defined in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa.1997). When analyzing the "nature and quality" of "contacts" that involve the internet, many courts have discussed in great detail the "sliding scale" of web activity first articulated in Zippo. See Enterprise Rent-A-Car v. Stowell, 137 F.Supp.2d 1151 (E.D.Mo.2001); Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc., 96 F.Supp.2d 919 (E.D.Mo.2000). At one end of the scale are "passive" sites, where a defendant has "simply posted information on an [i]nternet site." Zippo Mfg. Co., 952 F.Supp. at 1124. Here personal jurisdiction, without more, should not be applied. Id. At the other end, are "interactive" sites, where a defendant "clearly does business over the [i]nternet." Id. According to Zippo, in these instances, personal jurisdiction should be imposed. Id. In between are websites where a user "can exchange information with the host computer." Id. In these cases, it is suggested that courts examine "the level of interactivity and commercial nature of the exchange of information" that occurs on the website. Id.
The Zippo framework is a continuum, and applying this sliding scale, the Court finds that the website in question is neither entirely passive nor squarely interactive. The defendant is not simply posting information on its website, but due to the nature of the hotel business, it is not completing transactions over the internet either. This case falls somewhere in the middle, which requires an examination of "the level of interactivity and commercial nature" of the website. Zippo Mfg. Co., 952 F.Supp. at 1124; Uncle Sam's Safari Outfitters, Inc., 96 F.Supp.2d at 922.
Although reservations can be made over the internet, this case is clearly distinguishable from those where goods may be ordered over the internet. See, e.g., American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc., 106 F.Supp.2d 895, 899-903 (N.D.Tex.2000) (specific jurisdiction was proper over defendant who had established "virtual store" on its website for the sale of eyewear). In internet cases involving the sale of goods, the entire transaction (order, payment, and confirmation) can be completed online. The resident can bring about the transmission of the goods into *1088 the forum state through the order alone. Hotels, on the other hand, are somewhat unique in the internet context. Neither party anticipates that goods, services, or information of intrinsic value will be transmitted or provided in the forum state as a result of the internet exchange of information. To the contrary, both parties recognize that the internet exchange is simply preliminary to the individual traveling outside the forum state to use the service. In this respect, the exchange of information over the internet is not unlike a toll-free reservations hotline. The purpose of the internet interaction is not achieved until the resident customer leaves the forum state and arrives at the hotel destination.
In addition to the website, there has been no evidence offered to suggest that Imperial Palace has directly advertised or solicited business in Missouri. See, e.g., CoolSavings.com, Inc. v. IQ. Commerce Corp., 53 F.Supp.2d 1000, 1002-1003 (N.D.Ill.1999) ("minimum contacts" were found where defendant established interactive website and used marketing firm in the forum state to promote its capabilities). Furthermore, the nature of defendant's business is not targeted to Missouri residents. See, e.g., Sports Authority Mich., Inc. v. Justballs, Inc., 97 F.Supp.2d 806, 814 (E.D.Mich.2000) (defendant used website to market sports memorabilia of teams from the forum state). Imperial has done no more than provide a website from which those who choose to seek out the site may make a reservation. The nature and quality of the defendant's contactthe websitedoes not alone weigh toward an exercise of personal jurisdiction. The application of the remaining four factors in Burlington confirms the absence of minimum contacts.
Looking to the second Burlington factor, the plaintiffs have offered no evidence whatsoever of any use of the website by Missouri residents. Other than stating that the website "allows" residents of the forum state to enter into agreements to acquire hotel accommodations, the plaintiffs have not alleged or provided any evidence that residents of Missouri have indeed made such arrangements via the internet. More importantly, the plaintiffs themselves do not maintain that they have used the website.
The central reason why plaintiffs fail to establish the necessary minimum contacts for specific jurisdiction, however, is because they have failed to demonstrate that their cause of action has any relation to Imperial Palace's "contacts" with Missouri. From the record before the Court, the defendant's only contact with Missouri is a website that is accessible to residents in Missouri. The subject matter of plaintiff's suit is a slip and fall accident that occurred on the hotel premises in Las Vegas. That event is entirely unrelated to the defendant's website. While the Court is not suggesting that these facts would necessarily change the analysis, the plaintiffs do not maintain that they used the website to make reservations with the Imperial Palace, that their travel agent used the website to secure their reservations, or that they were enticed by the website to visit the Imperial Palace. In fact, they do not claim to have ever viewed the website prior to their visit to the defendant's hotel. The Court can see no causal link or relationship between Mr. Bell's accident and the sole forum contact by Imperial Palace, its website. Without such a connection, specific personal jurisdiction does not exist. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (specific jurisdiction exists when "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities") (citations omitted). See also Mink v. AAAA Development, L.L.C., 190 F.3d 333, *1089 336 (5th Cir.1999) (only general jurisdiction, and not specific jurisdiction, may be available where plaintiff has not shown that the contacts related directly to the cause of action).
In "minimum contacts" analysis, the remaining two factors, the interest of the forum state and the convenience of the parties, are generally accorded less weight. Burlington, 97 F.3d at 1102. Here, it is not necessary to analyze the remaining factors, for these factors "cannot make up for the absence of minimum contacts." Digi-Tel, 89 F.3d at 525. However, it is equally clear that neither of these factors weigh toward the granting of personal jurisdiction in this instance. Missouri has no particular interest in providing a forum for plaintiffs' cause of action. Unlike cases such as trademark infringement, where the effects and damages from the tort are felt in the forum state, here the tort and injury occurred in Nevada. See Maritz v. Cybergold, Inc., 947 F.Supp. 1328, 1331 (E.D.Mo.1996). Indeed, in support of their cause of action, plaintiffs allege that defendant's conduct violated the laws and ordinances of the state of Nevada. Complaint ¶ 9(g). As such, Nevada, and not Missouri, would appear to have the greatest interest in providing a forum to interpret its law.
Nor does convenience of the parties weigh toward jurisdiction in this forum. The accident occurred only as a result of the plaintiffs' election to visit Nevada. Defendant resides in Nevada, and presumably most non-party witnesses reside there as well. At best, both parties are equally inconvenienced whether the forum is in Nevada or Missouri.
Weighing all five factors, the Court finds the requisite minimum contacts necessary to satisfy due process for specific personal jurisdiction are not present. This result is consistent with recent cases from this District have considered the imposition of specific personal jurisdiction based solely on the existence of an internet website. See Enterprise Rent-A-Car, 137 F.Supp.2d 1151; Uncle Sam's Safari Outfitters, Inc., 96 F.Supp.2d 919.[5] In Uncle Sam's, a suit involving trademark infringement, the defendant had published a website that was still under construction at the time of the hearing on the motion. Merchandise was posted on the site, but it did not have the capability to take online orders; rather, interested buyers were required to use the toll-free telephone number advertised on the site to place an order. Moreover, no orders taken over the phone had been from Missouri. Although the cause of action was related to the website, the court found the company's contacts with Missouri to be inadequate. The website was not sufficiently interactive, and there was no evidence that residents of Missouri had used the website.
The internet cases plaintiffs cite in their opposition memorandum are distinguishable from the case at hand, because in each instance the cause of action arose out of or was related to the defendant's internet website. See CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.1996) (plaintiff brought suit asking for declaratory judgment that it had not infringed upon defendant's trademarks by placing the defendant's software on its internet site); Neogen Corp. v. Neo Gen Screening, Inc., *1090 109 F.Supp.2d 724 (W.D.Mich.2000) (plaintiff brought suit alleging that defendant violated trademark law by using the name "www.neogen.com" for its website); Tech Heads, Inc. v. Desktop Serv. Ctr., Inc., 105 F.Supp.2d 1142 (D.Or.2000) (plaintiff brought suit alleging that defendant violated trademark law by using the "Tech Head marks" on its internet site); Zippo Mfg. Co., 952 F.Supp. 1119 (plaintiff brought suit alleging that defendant violated trademark law by using the domain names "zippo.com" and "zippo.net").
To support specific personal jurisdiction, it is not enough for plaintiffs simply to allege the existence of an "interactive" website. The nature of the website, its use in the forum, and the relation of that use to the litigation are critical in assessing personal jurisdiction. The plaintiffs have not satisfied any of the Burlington factors and, therefore, have not shown the minimum contacts necessary for specific personal jurisdiction in this forum.

B. General Jurisdiction
Even though the present cause of action does not arise from the defendant's website, the Court may still exercise general personal jurisdiction over the defendant if the defendant has maintained "continuous and systematic contacts" with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. at 414 n. 8, 104 S.Ct. 1868; Morris v. Barkbuster, Inc., 923 F.2d 1277, 1281 (8th Cir.1991). This standard requires the plaintiff to show more than isolated or minimum contacts by the defendant with the State of Missouri. The court may assert general jurisdiction over a defendant only when the "continuous corporate operations within a state [are] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (citing International Shoe Co., 326 U.S. at 316, 66 S.Ct. 154).
Considering that the consequences of general jurisdiction are so significantthe party may be hauled into the forum state to defend any cause of actionthe bar to show minimum contacts is set even higher than that required for specific jurisdiction. The courts are reluctant to assert general jurisdiction, and the Supreme Court has upheld a finding of general jurisdiction only once. Perkins, 342 U.S. 437, 72 S.Ct. 413. See also Bell v. Trans Western, 53 F.3d at 923 (while contacts are insufficient to support general jurisdiction, minimum contacts may exist for specific jurisdiction); Bell v. U.S. Kids, 22 F.3d at 819 (same); Morris, 923 F.2d at 1281 (same).
In Perkins, the nonresident defendant was a Philippine corporation that maintained an office in the forum state in which the president and general manager conducted their wartime business. Id. at 438, 72 S.Ct. 413. The Supreme Court relied upon the defendant's numerous business activities in the forum state in finding that the defendant had the type of continuous and systematic contacts to allow the exercise of general jurisdiction in a constitutional manner. In Helicopteros Nacionales de Colombia v. Hall, the Supreme Court again broached the issue of general jurisdiction and concluded that the nonresident defendant's contacts were not sufficient to meet Due Process requirements. 466 U.S. 408, 414-15, 104 S.Ct. 1868 (1984). There, the company purchased most of its equipment in the forum state, the defendant's chief executive officer flew to the forum state to negotiate a contract, personnel were sent to the forum state for training, and checks were drawn from banks in the forum state. Id. at 415-17, 104 S.Ct. 1868. Even under this set of facts, the Supreme Court found that the defendant's contacts were not sufficient to *1091 meet the burden necessary for general personal jurisdiction. Id.
In the present action, the plaintiffs have failed to meet their burden. As set forth above, Imperial Palace does not maintain any agents, offices, bank accounts, or telephone numbers in the State of Missouri; does not own, use, or possess any real or tangible personal property in Missouri; has not entered into any contracts to perform services or furnish materials here; and does not directly advertise or solicit business in this forum state. Defendant's maintenance of an "interactive" website for reservations, the sole factor upon which plaintiffs rely, is not enough to subject defendant to suit in every forum on every ground. Such a conclusion would turn the notion of federal personal jurisdiction on its head, eliminating the protections that jurisdictional requirements were designed to safeguard. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (maintenance of a suit should not offend "tradition notions of fair play and substantial justice"). As the D.C. Circuit recently noted:
This theory simply cannot hold water. Indeed, under this view, personal jurisdiction in [i]nternet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the [i]nternet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp., 444 U.S. at 297, 100 S.Ct. 559. In the context of the [i]nternet, [the plaintiff]'s expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Our sister circuits have not accepted such an approach, and neither shall we.
GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1350 (D.C.Cir.2000).
The advent of e-commerce presents unique challenges to the traditional analysis of jurisdictional contacts for general jurisdiction. Unlike most media, an internet website requires little expenditure of resources, it is directly targeted to any particular group of individuals or geographic area, persons through their own impetus must seek out the site, and yet a website has the potential to reach millions throughout the country and even the world. With seemingly inconsequential effort, and without any contacts directed toward any particular forum, the medium could subject persons or companies who maintain websites to personal jurisdiction in every forum. With this background in mind, the Court proceeds cautiously in its analysis of general jurisdiction in the internet setting.
The analysis cannot begin and end with the "active" and "passive" labels. While the sliding scale suggested by the court in Zippo may be a relevant factor in assessing general jurisdiction,[6] it is not alone determinative. The fact that a site is classified as "interactive" is irrelevant to the analysis of general jurisdiction if no one from the forum state has ever used the *1092 site. See Coastal Video Communications, Corp. v. Staywell Corp., 59 F.Supp.2d 562 (E.D.Va.1999) (an interactive website that has "the potential to reach a significant percentage of the forum state's population" is not enough to find general personal jurisdiction). While the maintenance of a fully interactive website may, but does not necessarily, provide sufficient minimum contacts with the forum to support specific jurisdiction for a cause of action that arises out of or is related to the website, much more "contact" with the forum is necessary to support general jurisdiction where the cause of action is unrelated to the website.
Neither party in this case has even alluded to use of the Imperial Palace website by residents of Missouri. Nor have the plaintiffs endeavored to show by inference that residents of Missouri are using the site by, for example, showing that the site is targeted to users from Missouri. See Sports Authority Mich., Inc., 97 F.Supp.2d at 814 (defendant's allegedly infringing website was used to market sports memorabilia with logos of the forum state's athletic teams). Even if the existence of an "interactive" website were sufficient to support general jurisdiction in some circumstances, plaintiffs have not shown those circumstances here. Viewing the record in the light most favorable to the plaintiffs, they have not shown the "continuous and systematic contacts" necessary to make a prima facie case for the exercise of general jurisdiction.

Service of Process
Defendant also moves to dismiss under Rule 12(b)(5), F.R.Civ.P., for insufficiency of service of process. Defendant argues that service of process was improper in that it did not receive a Notice and Request for Waiver. Under Rule 4(d), F.R.Civ.P., a Notice and Request for Waiver is only necessary when service is effected by mail; it is not necessary when personal service is made to the defendant's place of business. In its opposition brief, the plaintiffs provided convincing evidence that service was made in person to Imperial Palace's place of business. See Plaintiffs' Exh. 2, (Return of Service, signed by the process server). The defendant made no response in its reply. The Court therefore finds no deficiency of service, and defendant's motion to dismiss for insufficiency of service is denied.

Conclusion
Plaintiffs have requested, in the alternative, that the Court transfer the case to a district in which it could have been originally brought. Section 1631 of 28 U.S.C. provides that "[w]henever ... [a] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed...." The Court finds that in the interest of justice and efficiency, it is appropriate to transfer this case to the District of Nevada, where the defendant resides and the alleged tort transpired.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for insufficiency of service (Docket #6) is DENIED.
IT IS FURTHER ORDERED that Defendant's Motion to Dismiss for lack of personal jurisdiction (Docket #6) is GRANTED.
IT IS FURTHER ORDERED that pursuant to 28 U.S.C. § 1631, the Clerk of Court is directed to transfer this action to the United States District Court for the District of Nevada.
NOTES
[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).
[2] "[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, the court may inquire, by affidavit or otherwise, into the facts as they exist." Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir.1998) (quoting Land v. Dollar, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).
[3] Missouri's long-arm statute, Mo.Rev.Stat. § 506.500, in material part provides as follows:

Any person or firm whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts: (1) The transaction of any business within this state;....
[4] The five factor test cited in Burlington was expressed in earlier cases, as well. See, e.g., Bell v. U.S. Kids, 22 F.3d at 819 (citing Land-O-Nod Co. v. Bassett Furniture Indus., 708 F.2d 1338, 1340 (8th Cir.1983)).
[5] The present case is distinguishable from Maritz v. Cybergold, Inc., 947 F.Supp. 1328 (E.D.Mo.1996), which found personal jurisdiction appropriate in a trademark infringement case based on the defendant's internet activities. In Maritz, however, there was evidence presented that information had been transmitted into Missouri approximately 131 times, the defendant's conduct caused injury to the plaintiff in the forum state, and the cause of action, namely the infringement, arose out of the existence of the website. Id. at 1331-33.
[6] Most internet cases addressing personal jurisdiction, including Zippo itself, are trademark or copyright infringement disputes involving the content of a website. See, e.g., Uncle Sam's Safari Outfitters, Inc., 96 F.Supp.2d 919. Consequently, the Zippo analysis has been applied mainly to cases involving specific jurisdiction. The Zippo analysis, however, has been used to analyze general jurisdiction by at least one circuit. See Mink v. AAAA Dev. L.L.C., 190 F.3d 333, 336-337 (5th Cir.1999) (court adopted Zippo sliding scale approach in case involving question of general jurisdiction).