**Nancy Glass SNYDER, Plaintiff,**

v.

**DOLPHIN ENCOUNTERS LIMITED, Treasure Cay Services, Inc., and Liberty Travel Inc., Defendants.**

No. 02–CV–1264.

United States District Court, E.D. Pennsylvania.

Dec. 10, 2002.

Heather M. Eichenbaum, Spector Gadon & Rosen, P.C., Philadelphia, PA, for Plaintiff.

Bruce P. Merenstein, Schnader Harrison Segal & Lewis, LLP, Philadelphia, PA, Peter A. Dunn, Margolis Edelstein, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

The defendants Treasure Cay Services, Inc. and Dolphin Encounters Limited move to dismiss the plaintiff's claims and Liberty Travel, Inc.'s cross claim in this negligence action for lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief can be granted pursuant to rules 12(b)(2), (3), (5), and (6) of the Federal Rules of Civil Procedure. Upon consideration of the defendants' motion, the defendants' motion to dismiss the plaintiff's amended complaint and the cross claim of Liberty Travel, Inc. for lack of personal jurisdiction will be granted.

### A. Background

Consistent with the standards for deciding a motion to dismiss, the following facts are interpreted in the light most favorable to the plaintiff. The plaintiff, Nancy Glass Snyder, is a resident of Bryn Mawr, Montgomery County, Pennsylvania. (Pl's Amended Complaint at ¶ 1). Treasure Cay Services ("Treasure Cay") is a Florida corporation with its principal place of business in Fort Lauderdale, Florida. *Id.* at ¶ 3. Dolphin Encounters Limited ("Dolphin Encounters") is a Bahamian corporation with its principal place of business in Nassau, Bahamas. *Id.* at ¶ 2. Liberty Travel Inc. ("Liberty") is a New York corporation with its principal places of business in Philadelphia, Pa. and Fort Lauderdale, Fla. *Id.* at ¶ 4.

In or about July 2000, the plaintiff and her husband contacted Liberty to book a

vacation for their family to Nassau, Bahamas. The plaintiff alleges that during the course of one or more conversations with Liberty, Liberty's agent Diana Martinez recommended that the plaintiff and her family take part in a "dolphin encounter." (Pl's Br. in Opp'n to Def.'s Mot. to Dismiss at 1–2). According to the plaintiff, Ms. Martinez neither advised nor warned the plaintiff of the potential dangers of a dolphin encounter. *Id.*

The plaintiff's husband booked a dolphin encounter by credit card, using a "Dolphin Encounters, Ltd. Credit Card Authorization Form" provided to him by Liberty, and which he returned to either Treasure Cay or Dolphin Encounters. *Id.* The plaintiff alleges that Treasure Cay receives the credit card authorization forms as the agent for Dolphin Encounters and then pays Dolphin Encounters or deposits Dolphin Encounters' revenues into a Florida bank account. *Id.*

On August 26, 2000, the plaintiff and her family participated in a dolphin encounter at Dolphin Encounters on Blue Lagoon Island, Nassau, Bahamas which was booked and paid for through Liberty and Treasure Cay. (Am. Comp. at ¶ 17). Despite the alleged assurances of the employees and agents of Treasure Cay and Dolphin Encounters, during the plaintiff's dolphin encounter, a large dolphin landed on the plaintiff's head and pushed her underwater against the force of her life preserver. *Id.* at ¶¶ 24–29. The dolphin trapped the plaintiff underwater for several seconds. The plaintiff alleges that she suffered permanent partial hearing loss in one ear and cervical injury as a result of her encounter with the dolphin. *Id.* at ¶ 30.

The plaintiff originally filed this action in the Court of Common Pleas of Philadelphia County against Liberty, Treasure Cay and Dolphin Encounters. On March 12, 2001, the case was removed to this court. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332. On April 24, 2002, the plaintiff amended her complaint. On April 30, 2002, defendant Liberty answered the plaintiff's amended complaint and asserted a cross claim against defendants Dolphin Encounters and Treasure Cay.[1] On May 3, 2002, the defendants Dolphin Encounters and Treasure Cay moved to dismiss the plaintiff's claims as well as Liberty's cross claim for lack of personal jurisdiction, improper venue and insufficiency of service of process, and failure to state a claim under which relief can be granted under rules 12(b)(2), (3), (5), and (6) of the Federal Rules of Civil Procedure.

The plaintiff's amended complaint alleges that at all relevant times Dolphin Encounters, Liberty Travel, and/or Treasure Cay trained the dolphins, advertised and promoted dolphin encounters, and exercised control over the dolphin encounter. *Id.* at ¶¶ 24–32. The plaintiff alleges numerous claims sounding in negligence. *Id.* More specifically, the plaintiff claims, among other things, that the defendants had an obligation and legal duty to: conduct the dolphin encounter in a safe manner; warn the plaintiff of the risks and dangers of a dolphin encounter; avoid misstating the facts and risks associated with a dolphin encounter; train and supervise the participants and employees in their interaction with the dolphins; and properly train, control, and supervise the dolphins. *Id.*

---

1. Liberty Travel alleges that co-defendants Dolphin Encounters and Treasure Cay are alone liable and / or liable over to Liberty Travel for contribution and / or indemnity on the causes of action asserted by the plaintiff.

On July 29, 2002 the court ordered the plaintiff to file a motion in support of personal jurisdiction. On December 5, 2002 the court held a hearing on the issue of personal jurisdiction.

## B. Personal Jurisdiction

The defendants Treasure Cay and Dolphin Encounters move to dismiss the plaintiff's amended complaint and Liberty's cross claim on, among others, the ground that the court lacks personal jurisdiction over them. The plaintiff asserts that personal jurisdiction over the defendants is proper on the basis of principles of general jurisdiction. (Pl's Br. at 8–9).

■ Federal Rule of Civil Procedure 4(e) authorizes a district court to assert personal jurisdiction over a non-resident to the extent allowed by the law of the state in which it sits. *See Time Share Vacation Club v. Atlantic Resorts,* 735 F.2d 61, 63 (3d Cir.1984). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over nonresidents "to the fullest extent allowed under the Constitution of the Untied States ... based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons.Stat. § 5322(b). The statute also permits jurisdiction over a non-resident if the non-resident has "[c]aused harm or tortious injury by an act or omission in this Commonwealth" or "[c]aus[ed] any harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." § 5322(a)(3), (4). This means that this court's exercise of personal jurisdiction over the non-resident defendants Treasure Cay and Dolphin Encounters is proper, so long as there is no violation of procedural due process. *See Fields v. Ramada Inn, Inc.,* 816 F.Supp. 1033, 1035–36 (E.D.Pa. 1993).

■ A court may exercise personal jurisdiction as long as the "relationship among the defendant, the cause of action, and the forum falls within the 'minimum contacts' framework" established by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *Mellon Bank (East) PSFS, Nat'l Assn. v. Farino,* 960 F.2d 1217, 1221–22 (3d Cir.1992). The minimum contacts analysis is a " 'fair warning' requirement of due process which is satisfied 'if the defendant has purposely directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.' " *Id.* at 1222 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ In deciding a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true. Once a jurisdictional defense is raised, however, the plaintiff bears the burden of proving, through affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. *See Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir.1996), *cert. denied,* 519 U.S. 1028, 117 S.Ct. 583, 136 L.Ed.2d 513 (1996). The Plaintiff must establish those contacts with reasonable particularity. *See Farino,* 960 F.2d at 1223. Once the plaintiff makes out a prima facie case in favor of personal jurisdiction, the burden shifts to the defendant to establish that the presence of some other considerations would render jurisdiction unreasonable. *See Carteret Sav. Bank v. Shushan,* 954 F.2d 141, 150 (3d Cir.1992).

▇ In the context of due process, Pennsylvania's long arm statute contemplates that this court may exercise personal jurisdiction over non-resident defendants on the basis of either specific jurisdiction or general jurisdiction. *See* 42 Pa. Cons.Stat. §§ 5301, 5322; *Provident Nat'l Bank v. California Federal Savings & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir.1987). Specific jurisdiction may be established by showing that a defendant undertook some action by which he purposefully availed himself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of the laws of the forum. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Burger King Corp. v. Rudzewicz*, 471 U.S. at 472, 105 S.Ct. 2174.[2] General jurisdiction may be exercised even when the claim arises from the defendant's non-forum related activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A party subject to the general jurisdiction of a state may be called to answer any claims against him or her, regardless of whether the subject matter of the cause of action has any connection to the forum. *See Farino*, 960 F.2d at 1221. To establish general jurisdiction over a defendant, however, the plaintiff "must show significantly more than minimum contacts." *Provident Nat'l Bank*, 819 F.2d at 437. The nonresident defendant's contacts with the forum must be "continuous and systematic." *Fields*, 816 F.Supp. at 1036. Contacts are continuous and systematic if they are "extensive and pervasive." *Id.* The Court of Appeals for the Third Circuit requires a very high showing before a court may exercise general jurisdiction. *See Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir.1985).

▇ The plaintiff alleges the existence of "two separate and distinct sets of contacts" each of which she claims support this court's exercise of general jurisdiction over Treasure Cay and Dolphin Encounters.[3] (Pl's Br. at 11). First, the plaintiff argues that the defendants have continuous and systematic contacts with Pennsylvania because: (1) Treasure Cay received $13,500 in revenue from Pennsylvania residents in 2000–2001; (2) Dolphin Encounters, through Treasure Cay and Liberty, received $9,139 from Pennsylvania residents in 2000;[4] (3) Dolphin Encounters, through Treasure Cay and Liberty, received $4,400 from Pennsylvania residents in 2001;[5] (4) it is likely that Dolphin Encounters receives significantly more revenue from Pennsylvania residents than disclosed above because there are several other large travel agencies in Pennsylvania; (5) of the almost 500 requests that Treasure Cay received through its website

---

2. The plaintiff concedes that the court does not have specific jurisdiction over the defendants. (Pl's Br. at 8 n. 3)

3. The plaintiff argues in her brief that the court determined that she has already made a *prima facie* showing of personal jurisdiction as required under *Burger King* and its progeny in a telephone conference on October 10, 2002. (Pl's Br. at 7–8). The transcript of the telephone conference does not support the plaintiff's argument. The issue before the court at the telephone conference was whether to permit the plaintiff to take discovery on the issue; I decided that I would permit such discovery.

4. The plaintiff argues that this figure represents almost 50% of all revenues received in 2000 from Liberty through Treasure Cay.

5. The plaintiff argues that this figure represents approximately 25% of all revenues received in 2001 only from Liberty through Treasure Cay.

for information on Dolphin Encounters' dolphin excursions approximately 5% "clearly" originated from Pennsylvania; (6) of the 1500 requests for information regarding other services provided by Treasure Cay in the first seven months of 2002, 3% were identified as being from Pennsylvania; and (7) the websites of Treasure Cay and Dolphin Encounters were continuously and systematically contacted by users with Pennsylvania IP addresses.[6] (Pl's Reply Br. at 4–6).

Under the law of the Third Circuit, these contacts are insufficient to comprise the continuous and systematic contacts necessary to establish personal jurisdiction over Treasure Cay and Dolphin Encounters in the Commonwealth of Pennsylvania. In *Gehling,* the appellants brought a wrongful death action, alleging, among other things, negligence, breach of contract, fraudulent misrepresentation, and intentional infliction of emotional distress, after their son, a student at St. George's, died after running in a school-sponsored road race on Grenada. The appellants attempted to establish personal jurisdiction over the appellees on the grounds that the appellees carried on a substantial and continuous part of their business in Pennsylvania. The appellants pointed to several contacts between St. George's and Pennsylvania which they argued constituted continuous and substantial business by St.

George's in Pennsylvania: (1) St. George's solicited students by placing advertisements in the *New York Times* and *Wall St. Journal* each of which were circulated throughout Pennsylvania; (2) six percent of the students matriculating with the decedent came from Pennsylvania and paid thousands of tuition dollars to St. George's; (3) the Chancellor and Vice-Chancellor of St. George's undertook a "media swing" through, among other cities, Philadelphia, and, while in Philadelphia, appeared on radio and television shows with an audience of over 400,000; and (4) St. George's established a "cooperative relationship" with Waynesburg College in Waynesburg, Pennsylvania.

Despite these contacts, the Third Circuit found that the appellants failed to establish continuous and substantial business activity between St. George's and Pennsylvania sufficient to subject St. George's to personal jurisdiction for claims arising from non-forum related activities. *See id.* at 542. Significantly, the Third Circuit noted that the "unilateral activity" of the Pennsylvania students attending St. George's could not satisfy the requirement of contact with the forum state; accepting the appellant's argument, the court noted, would subject the appellee's to suit on non-forum related claims in every state in which a member of the student body resided. *Id.* Moreover, the Third Circuit found

---

**6.** The plaintiff claims that contacts with the defendants' websites break down as follows: (1) Dolphin Encounters' general website—986 hits (pa_dolphin_all_traffic); (2) Dolphin Encounters' on-line reservation page / form—281 hits (pa_dolphin_reserve_html); (3) Dolphin Encounters' online souvenir / memorabilia order page—219 hits (pa_dolphin_photos_html); (4) Treasure Cay's general website—619 hits (pa_tcay_all_traffic); (5) Treasure Cay's on-line reservations page—44 hits (pa_tcay_request_html).

The plaintiff acquired this information from a CD which she received pursuant to a sub-

poena served upon a company named Rapidsite. The information was extracted by David Catanoso using NetTracker Professional V6.0 and GeoBytes GeoLyzer. (Affidavit of David Cabanas, November 1, 2002).

The defendants Treasure Cay and Dolphin Encounters claim, and the plaintiff apparently admits, that the defendants did not receive any notice of the subpoenas for production of documents served on Rapidsite. In light of my rulings, I will take no action upon this transgression.

that, because the income the appellees derived from Pennsylvania in the form of tuition payments was not the result of in-state activities, but of educational services provided by St. George's in Grenada, the fact that Pennsylvania residents attended St. George's was insufficient to establish personal jurisdiction over the appellees. *See id.* at 543. Finally, the court rejected the appellants arguments that St. George's marketing activities and co-operative relationship with Waynesburg College established personal jurisdiction over St. George's.

The first contacts between the defendants Treasure Cay and Dolphin Encounters and the Commonwealth of Pennsylvania alleged by the plaintiff to support general personal jurisdiction do not rise even to the level of those at issue in *Gehling*. In light of *Gehling*, it is noteworthy that the first set of contacts stem almost exclusively from the relatively insubstantial "unilateral activity" of Pennsylvania residents. Also, the income Treasure Cay and Dolphin Encounters derive from Pennsylvania is not the result of in-state activities, but is the result of services provided in the Bahamas. The plaintiff, therefore, fails to establish her burden of demonstrating that the first set of contacts asserted to exist between the defendants Treasure Cay and Dolphin Encounters and the Commonwealth of Pennsylvania is sufficient to establish general personal jurisdiction over Treasure Cay and Dolphin Encounters.

■ The plaintiff focuses most of her efforts on her second argument that, because Treasure Cay and Dolphin Encounters operate interactive websites, they are subject to general personal jurisdiction in the Commonwealth of Pennsylvania. The advent of the Internet did not alter the Third Circuit's requirement that the plaintiff make a "very high showing" before a court exercises general personal jurisdiction over a non-resident defendant. *Molnlycke Health Care AB v. Dumex Medical Surgical Products, Ltd.*, 64 F.Supp.2d 448, 451 (E.D.Pa.1999). The case law in this district addressing the relationship between personal jurisdiction and Internet sites establishes a "sliding scale" of jurisdiction based largely on the degree and type of interactivity on the website in question:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.... At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive web site which does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Molnlycke*, 64 F.Supp.2d at 451 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)); *see also Barrett v. Catacombs Press*, 44

F.Supp.2d 717, 724–26 (E.D.Pa.1999) (looking to same framework); *Blackburn v. Walker Oriental Rug Galleries, Inc.,* 999 F.Supp. 636, 638 (E.D.Pa.1998) (same).[7]

The plaintiff alleges that Dolphin Encounters maintains three websites, which include an on-site reservation form, an on-site souvenir order form, an on-site "ask the trainer" form, and an on-site page that allows correspondence transmission to various management personnel at Dolphin Encounters. The plaintiff points out that in a three month period from July 2002 through October 15, 2002 Dolphin Encounters' three websites were contacted a total of 1,486 times by Pennsylvania IP addresses; of these contacts, 500 were with what the plaintiff considers interactive pages of Dolphin Encounters' websites such as the souvenir order form page and the on-line reservation page. She also alleges that Treasure Cay's website includes an on-line reservation form and an on-site page that allows correspondence transmission to various management personnel at Treasure Cay. Over the same three and a half month period that she used to tally contacts with Dolphin Encounters' websites, Treasure Cay's websites were contacted a total of 663 times by Pennsylvania IP addresses. Of these contacts, 44 were with what the plaintiff considers interactive web pages.

The facts here are analogous to those at issue in *Molnlycke* in which the court found that the defendant's maintenance of a website was not sufficient to establish general personal jurisdiction over the defendant. *See Molnlycke,* 64 F.Supp.2d at 454–55. In *Molnlycke,* the defendant's websites permitted users to place their names and addresses on a mailing list to receive product information, advertised products, and allowed users to order products directly from the website by clicking on any listed product, adding that item to a shopping cart, completing an on-line order form, and supplying a credit card number.

Nevertheless, the court in *Molnlycke* found that "the establishment of a website through which customers can order products does not, on its own, suffice to establish general jurisdiction" because such a finding "would effectively hold that any corporation with such a website is subject to general jurisdiction in every state." *Id.* at 451. It is noteworthy that in rejecting the plaintiff's argument that the defendant's websites were sufficient to establish general personal jurisdiction, the court in *Molnlycke* analyzed the issue of the Internet's impact on personal jurisdiction in light of the Third Circuit's prior jurisprudence, including, especially, *Gehling.* *See id.* at 452–53. In light of *Gehling,* the court emphasized two factors in analyzing whether the defendant's websites resulted in sufficient contacts with Pennsylvania to establish general personal jurisdiction. First, the defendants websites were not "targeted" specifically to reach out to Pennsylvanians. *Id.* at 452. Second, the plaintiff failed to demonstrate that the websites were "central" to the defendant's business in Pennsylvania. *Id.* Thus, the court found that the plaintiff failed to establish that the court could exercise general personal jurisdiction over the defendants.

Likewise, the plaintiff here fails to demonstrate that the operation of websites by Treasure Cay and Dolphin Encounters is sufficient to establish general personal jur-

---

**7.** Most of the cases applying this framework have looked to specific jurisdiction, but the framework may also be properly used in cases asserting general jurisdiction. *See Molnlycke,* 64 F.Supp.2d at 451.

isdiction over the defendants. As an initial matter, the main purpose of the defendants' websites is to provide general information. Thus, a significant number of the contacts are with the "passive" websites operated by Treasure Cay and Dolphin Encounters and not their interactive sites. A passive website that does little more than provide information is not grounds for the exercise of personal jurisdiction.

*Molnlycke* instructs that the establishment of websites by Treasure Cay and Dolphin Encounters through which customers can order souvenirs or book reservations is also insufficient to establish general jurisdiction. The websites operated by Treasure Cay and Dolphin Encounters do not specifically target Pennsylvanians. Moreover, the activity on websites of Treasure Cay and Dolphin Encounters does not establish that Pennsylvania is central to the business of Treasure Cay and Dolphin Encounters. If the contacts at issue here establish general personal jurisdiction, then any corporation with websites like Treasure Cay and Dolphin Encounters would be subject to general jurisdiction in every state. Thus, the plaintiff fails to demonstrate that the operation of websites by Treasure Cay and Dolphin Encounters establishes the court's general personal jurisdiction over the defendants.[8]

Because the plaintiff's amended complaint against Treasure Cay and Dolphin Encounters will be dismissed without prejudice for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), it is unnecessary to address whether the plaintiff's claims against Treasure Cay and Dolphin En-

counters should be dismissed for improper venue, insufficiency of service of process, and failure to state a claim for which relief can be granted under rule 12(b)(3), (5), and (6) of the Federal Rules of Civil Procedure. Accordingly, the motion of Treasure Cay and Dolphin Encounters to dismiss the cross claim of Liberty will also be granted.

## ORDER

**AND NOW,** this day of December 2002, I **ORDER** that the motion of defendants Treasure Cay Services, Inc. and Dolphin Encounters Limited to dismiss (Docket Entry # 14) the plaintiff's amended complaint (Docket Entry # 12) is **GRANTED** and the plaintiff's amended complaint is **DISMISSED WITHOUT PREJUDICE.** I further **ORDER** that the motion of defendants Treasure Cay Services and Dolphin Encounters Limited to dismiss (Docket Entry # 14) the cross-claim of defendant Liberty Travel, Inc. (Docket Entry # 13) is **GRANTED** and the cross claim of Liberty Travel, Inc. is **DISMISSED WITHOUT PREJUDICE.** I finally **ORDER** that the motion of defendants Treasure Cay Services and Dolphin Encounters for sanctions for violations by the plaintiff's counsel pursuant to Rule 45 is **DENIED.**

---

8. The plaintiff argued in the hearing on December 5, 2002 that *Broussard v. Deauville Hotel Resorts*, No. Civ. A. 98–3175, 1999 WL 621527, at *1 (E.D.La. August 13, 1999) supports her position that general jurisdiction over Treasure Cay and Dolphin Encounters is proper because of their websites. Notwithstanding the fact that an opinion by the District Court for the Eastern District of Louisiana is not binding on this court, the court in *Broussard* found that it had neither specific nor general jurisdiction over the defendant because the defendant operated a passive website. *See id.* at *3. Thus, if anything, *Broussard* hurts the plaintiff's case.