**Felicita ARRIAGA, Plaintiff,**

v.

**IMPERIAL PALACE, INC., Defendant.**

**No. CIV.A. H–02–1071.**

United States District Court,
S.D. Texas,
Houston Division.

March 20, 2003.

D. John Leger, Leger & Burke, Houston, TX, Counsel for Plaintiff.

Larry D. Thompson and Robert G. Smith, Jr., Lorance & Thompson PC, Houston, TX, Counsel for Defendant.

## ORDER

HITTNER, District Judge.

Pending before the Court is Defendant Imperial Palace, Inc.'s Motion to Dismiss for Improper Venue and for Lack of Personal Jurisdiction. Having considered the motion, submissions on file, applicable law, and the entire record, the Court hereby issues the following order.

## I. Background

This suit involves a personal injury action brought by Plaintiff Felicita Arriaga ("Plaintiff") for injuries she sustained on June 22, 2000, while she was a guest at the Imperial Palace Hotel & Casino in Las Vegas, Nevada. Plaintiff is a resident of Texas. Defendant Imperial Palace, Inc. ("Imperial Palace") is a Nevada corporation with its principal place of business in the State of Nevada. Plaintiff alleges she was injured when she fell in her hotel room. She then returned to Texas, where she received medical care related to her injuries.

Imperial Palace filed its motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure arguing that (1) it has not had continuous or systematic contacts with the forum state sufficient to justify the Court's exercise of jurisdiction, and (2) the Court's assumption of jurisdiction over it would offend traditional notions of fair play and substantial justice. Imperial Palace asserts, by way of an uncontroverted affidavit of its General Manager, that it is a Nevada corporation with its principal place of business in Las Vegas, Nevada; it does not maintain any agents, offices, bank accounts, or telephone numbers within Texas; it does not directly advertise or solicit sales in Texas; it has had no contacts with Texas related to Plaintiff's alleged causes of action; it does not own, use, or possess any real or tangible personal property in Texas; and, it has not entered into a contract to perform services or to furnish materials in Texas.

## II. Law and Analysis

### A. Personal Jurisdiction

Although Imperial Palace is the moving party, Plaintiff bears the burden of establishing personal jurisdiction. *See Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 854 (5th Cir.2000). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve any factual conflicts in favor of the plaintiff. *Alpine View Co. v. Atlas Copco A.B.,* 205 F.3d 208, 215 (5th Cir.2000); *Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 869 (5th Cir.2000). In such a case, the plaintiff needs only present sufficient facts to establish a prima facie case of personal jurisdiction to satisfy its burden. *Kelly,* 213 F.3d at 854.

"In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law." *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 867 (5th Cir.2001). "[T]he Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment." *Id.* The Due Process Clause permits a court to exercise personal jurisdiction over a foreign defendant when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999) (internal quotations omitted) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). " 'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Panda Brandywine Corp.,* 253 F.3d at 867 (citing *Alpine View Co.,* 205 F.3d at 215). Specific jurisdiction arises when a nonresident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* at 868 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528

(1985)).[1] General jurisdiction exists when a nonresident defendant's contacts with the forum state are unrelated to the cause of action but are "substantial, continuous and systematic." *Alpine View Co.*, 205 F.3d at 215 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

Plaintiff contends that Imperial Palace has sufficient contacts to support the exercise of general jurisdiction because it maintains a web site that offers information about the hotel and casino and allows customers to make on-line hotel reservations with the submission of credit card information.[2] Plaintiff does not assert that she made a reservation on-line or utilized the web site. Imperial Palace provides an affidavit indicating that Plaintiff did not make a reservation, but checked in under the reservation of another individual.[3]

In determining whether personal jurisdiction exists where minimum contacts are asserted based on Internet usage, the Fifth Circuit applies the sliding scale approach set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997), to determine the nature and quality of the commercial activities conducted by a defendant over the Internet. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336–37 (5th Cir.1999). At one end of the spectrum is the situation in which personal jurisdiction is proper, where a defendant conducts business by entering into contracts with forum residents that "involve the knowing and repeated transmission of computer files over the Internet." *Id.* at 336 (quoting *Zippo Mfg. Co.*, 952 F.Supp. at 1124). At the other end of the spectrum are "passive" web sites that only provide information and advertise services: passive web sites are insufficient to support personal jurisdiction over a nonresident defendant. *Id.* In the middle of the spectrum are situations where a defendant has a web site that allows a user to exchange information with a host computer. Under these circumstances, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* (quoting *Zippo Mfg. Co.*, 952 F.Supp. at 1124). The middle-of-the-spectrum web sites have "some interactive elements, through which a site allows for bilateral information exchange with its visitors." *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir.2002). Plaintiff argues that Imperial Palace enters into contracts with residents of other states involving the transmission of computer files over the Internet (on one end of the *Zippo* spectrum) because it allows hotel reservations to be made on its interactive web site using credit card information. A survey of the case law on this issue, however, convinces the Court that these circumstances fall squarely within the middle ground of the spectrum, in which the defendant has a web site that allows a user to exchange information with a host computer.[4] Plain-

---

1. It is undisputed that specific jurisdiction is not at issue in that Plaintiff's alleged injury did not arise from or relate to Imperial Palace's contacts with Texas.

2. Plaintiff states that the web site also includes information regarding or access to the following: reservations, specials, give-aways, player's club, jobs, hotel information, hotel services, "the guest book," weather information, driving instructions, "contact us," casino events, shows, tours, and information on "gambling problems."

3. The fact that Plaintiff did not make a reservation via the Internet is essentially irrelevant to the Court's inquiry into general jurisdiction.

4. No court in the Fifth Circuit has previously determined where an Internet reservation system falls on the *Zippo* sliding scale. One district court in the Eighth Circuit has, how-

tiff asserts that a potential customer, in addition to the ability to make a reservation on the web site, can also "pay for a reservation," cancel a reservation, determine the availability of rooms and the corresponding rates, and access various other information. Although the courts regularly apply the *Zippo* sliding scale to an analysis of general jurisdiction, the Fifth Circuit recently commented on whether this is the best method:

> While we deployed this sliding scale in *Mink v. AAAA Development LLC*, it is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction—in other words, while it may be doing business *with* Texas, it is not doing business *in* Texas.

*Revell*, 317 F.3d at 470.

Imperial Palace argues that on-line reservations by Texas customers accounted for less than three-quarters of one percent of the total room nights at Imperial Palace for the year 2000. Plaintiff asserts that, based on discovery related to this jurisdictional issue, Imperial Palace received bookings from 2347 Texans via the Internet web site, resulting in 5545 night "stays" during 1995 through 2002—representing more than five percent of the bookings for this period. Plaintiff notes, however, that the discovery responses do not distinguish between reservations made on the web site by individuals versus those made by representatives of the travel industry. Defendant disputes this five percent figure, arguing that in the discovery responses, the Texas bookings are listed for 1995 through July 2002, while the bookings not limited to Texas are listed only for 1998 through 2002. Defendant also states that it appears "Plaintiff calculated the 5 [percent] by comparing the Texas total to all bookings total, but that is only all bookings through Sceptre, over the Internet, not all bookings for the entire hotel." Yet, Imperial Palace does not provide the Court with an accurate figure. Plaintiff further asserts that discovery demonstrates that more than fifty percent of Imperial Palace's income is "derived from its website" and more than five percent of this income is "derived from Texas residents utilizing the website." Finally, Imperial Palace indicates that in the year 2000 there were 985,500 room nights available; 726 of these room nights were utilized by Texas customers.

This Court reaches the same conclusion as another federal district court in a negligence case involving this Defendant:

ever, reached the same conclusion as this Court regarding *Imperial Palace's* web site. *See Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F.Supp.2d 1082, 1087 (E.D.Mo.2001) ("The defendant is not simply posting information on its website, but due to the nature of the hotel business, it is not completing transactions over the internet either. This case falls somewhere in the middle, which requires an examination of the level of interactivity and commercial nature of the web site.") (internal quotations omitted). The *Bell* court distinguished cases in which goods can be ordered over the Internet in the contract scenario:

> Hotels ... are somewhat unique in the internet context. Neither party anticipates that goods, services, or information of intrinsic value will be transmitted or provided in the forum state as a result of the internet exchange of information. To the contrary, both parties recognize that the internet exchange is simply preliminary to the individual traveling outside the forum state to use the service. In this respect, the exchange of information over the internet is not unlike a toll-free reservations hotline. The purpose of the internet interaction is not achieved until the resident customer leaves the forum state and arrives at the hotel destination.

*Id.* at 1088.

The question before the Court, therefore, is whether the maintenance of an internet website that allows visitors to the site to make hotel room reservations alone constitutes sufficient contact with Missouri to subject the defendant to personal jurisdiction in this Court for an alleged tort that occurred in Nevada. The Court finds that it does not.

*Bell v. Imperial Palace Hotel/Casino, Inc.,* 200 F.Supp.2d 1082, 1085 (E.D.Mo.2001).

■■■ Although the *Bell* court commented that neither party had "even alluded to use of the Imperial Palace website by residents of [the forum state]," *Id.* at 1092, this Court finds the evidence that a fraction of reservations are made by Texas residents insufficient to meet the strenuous standard required for a finding of general personal jurisdiction. Because Imperial Palace does not conduct regular business in Texas and does not make any business decisions in Texas, the nature of its contacts with Texas is not "substantial." *See Revell,* 317 F.3d at 471.

Even a web site that is interactive requires initiation by the user. Imperial Palace's web site is accessible nationwide, but requires an affirmative action by those accessing it. Imperial Palace takes no deliberate action in Texas: it simply makes its web site available nationwide. Further, when a patron makes a reservation on Imperial Palace's web site, services are not provided and payment is not made until the person reaches Nevada.

The Fifth Circuit in *Revell* shifted the analysis under general jurisdiction from a painstaking focus on the extent of interactivity of the contact to a more traditional general jurisdiction analysis under *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). *Revell,* 317 F.3d at 471. The Fifth Circuit also conducted a comparison with the facts in *Bird v. Parsons,* 289 F.3d 865 (6th Cir.2002), where the Sixth Circuit found

that the Ohio courts lacked general jurisdiction over a nonresident business that registered domain names even though the defendant maintained a web site available to Ohio residents for commerce and more than four thousand Ohio residents had actually registered domain names with the defendant. *Revell,* 317 F.3d at 471.

The facts before the Court are analogous to those in *Snyder v. Dolphin Encounters Ltd.,* 235 F.Supp.2d 433 (E.D.Pa. 2002), in which the plaintiff sought to subject defendants to general jurisdiction based on their web sites, which included a reservation form, a souvenir order form, an "ask the trainer" form, and a page allowing customers to transmit correspondence to defendants' management personnel. *Id.* at 440. The court found these circumstances insufficient to establish jurisdiction:

> [T]he establishment of websites by [Defendants] Treasure Cay and Dolphin Encounters through which customers can order souvenirs or book reservations is also insufficient to establish general jurisdiction. The websites operated by Treasure Cay and Dolphin Encounters do not specifically target Pennsylvanians. Moreover, the activity on websites of Treasure Cay and Dolphin Encounters does not establish that Pennsylvania is central to the business of Treasure Cay and Dolphin Encounters. If the contacts at issue here establish general personal jurisdiction, then any corporation with websites like Treasure Cay and Dolphin Encounters would be subject to general jurisdiction in every state.

*Id.* at 441.

As in *Snyder,* Imperial Palace's web site is not targeted specifically to reach Texans. Additionally, Plaintiff has failed to demonstrate that the web site is central to Imperial Palace's business in Nevada. Although Imperial Palace is doing business

*with* Texas, it is not doing business *in* Texas. Thus, the requirement of substantial, continuous, and systematic contacts is not met.

In its briefing, Imperial Palace argues that its web site users do not interact directly with Imperial Palace because it contracts with Sceptre Hospitality Resources, Inc. ("Sceptre"), a Colorado corporation, which in turn arranges for a third-party provider to handle the reservations. Specifically, Imperial Palace does not own or operate the link to the web page where reservations are confirmed online. Imperial Palace pays Sceptre on a per transaction basis. Since 1995, Sceptre has apparently used three different third-party providers. Imperial Palace does not contract or have an agreement directly with the third-party provider. The third-party provider typically faxes or e-mails information regarding reservations that have been made over the course of a particular day to Imperial Palace.

Plaintiff disputes Imperial Palace's position that the web site does not allow direct interaction with potential customers based on information provided on the web site itself, arguing that "the Defendant's web site reflects that hotel rooms can be booked directly through the Imperial Palace Hotel." Further, Plaintiff argues that the *Zippo* analysis does not permit a defendant to escape personal jurisdiction because it acts through an agent.

■ The Court finds Imperial Palace's assertions of no direct interaction immaterial because the third-party is an invisible, behind-the-scenes entity. Imperial Palace has created the "face" of the web site such that a user would reasonably believe he is forwarding his reservation and credit card information directly to Imperial Palace, for use in securing a room at the hotel. Imperial Palace does, in fact, receive the information shortly after it is entered. The fact that a third-party handles the mechanics of information transfer is irrelevant. Although the Court rejects Imperial Palace's argument on this point, it nevertheless finds the nature and extent of Imperial Palace's contacts with Texas insufficient to meet the requisite minimum contacts test. The Court concludes that the ability of an out-of-state customer to make a reservation through an entity's web site is akin to publication of a toll-free reservation number, which has been held insufficient to establish that an entity is doing business in the forum state. *See Muse v. Vagabond Inn Hotel,* No. 01–CV–106(FB), 2002 WL 15803, at *2 (E.D.N.Y. Jan.2, 2002) (holding that the court could not exercise general jurisdiction over a defendant simply because it published a nationwide toll-free number for the purposes of making reservations). An Internet "presence" with on-line reservation capability like that of Imperial Palace does not satisfy the substantiality requirement. Subjecting a defendant with this level of an interactive web site to suit in any forum would not conform with notions of fair play and substantial justice. In sum, Plaintiff has failed to demonstrate a prima facie showing of personal jurisdiction over Imperial Palace.

## B.  Venue

■ Plaintiff alleges in her complaint that venue is proper because "a substantial part of the events giving rise to [the] claim" occurred in Texas, citing 28 U.S.C. § 1391(a)(2). The substantial part of the events giving rise to the claim as referenced by Plaintiff refers to the medical care she received in Texas as a result of the incident. Imperial Palace argues that the fact Plaintiff received medical care in Texas does not give rise to her claim. An appropriate venue is one in which a substantial part of the event or omissions giving rise to the claim occurred or where the underlying transactions took place. 28

U.S.C. § 1391(a). The Court agrees that Plaintiff's allegation with regard to venue is unfounded and that this Court is an improper venue.

 If a district court concludes that it lacks jurisdiction over a civil case, it may "in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 1631. Moreover, if a court determines that the plaintiff has brought her case in the wrong venue, the court may at its discretion and "in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); see *CD Solutions, Inc. v. Tooker*, 965 F.Supp. 17, 20–21 (N.D.Tex.1997) (finding that transfer to the district where the defendants resided rather than dismissal would serve the interests of justice where the court concluded personal jurisdiction was lacking in an Internet-related case) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–66, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)); *Smith v. Basin Park Hotel, Inc.*, 178 F.Supp.2d 1225, 1235–36 (N.D.Okla.2001) (finding transfer rather than dismissal appropriate "given potential statute of limitations problems faced by plaintiff if [the] case were dismissed"). This Court finds that the interest of justice is best served by transferring this case to the District of Nevada, where Imperial Palace is incorporated and has its principal place of business.

### III. Conclusion

In accordance with the foregoing, the Court hereby

ORDERS that Defendant Imperial Palace, Inc.'s Motion to Dismiss is GRANTED to the extent that this Court concludes Plaintiff has failed to demonstrate a prima facie showing of personal jurisdiction over Imperial Palace. This Court lacks general personal jurisdiction over Imperial Palace. Being such, the Court further

ORDERS that pursuant to 28 U.S.C. § 1631, this case shall be transferred to the United States District Court for the District of Nevada, Southern Division (Las Vegas).